**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

Driver Opportunity Partners I LP,

         *Plaintiff*,

    v.

J. Michael Adams, Jr., *et al*.,

         *Defendants*.

Civ. A. No: 3:23-cv-00056-SLH

**PLAINTIFF DRIVER OPPORTUNITY PARTNERS I LP'S**
**MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Driver Opportunity Partners  I LP ("Plaintiff" or "Driver"), by and through its undersigned counsel, hereby moves this Court for an Order (1) enjoining Defendants from holding the 2023 annual meeting of AmeriServ Financial, Inc.'s shareholders until further notice; and (2) ordering Defendants to pay Plaintiff's reasonable attorneys' fees and costs incurred in connection with this Motion.

In further support of this Motion, Driver incorporates the Verified Complaint for Declaratory, Injunctive, and Other Relief and supporting Appendix, together with this Motion's Memorandum of Law in Support, all of which have been filed contemporaneously with this Motion.

WHEREFORE, Driver respectfully requests that the Court grant Driver's Motion and enter an order granting Driver's requested relief in the form of the attached proposed Order.

Date:  March 30, 2023

/s/Jonathan S. Krause
Jonathan S. Krause, Esq.
Thomas V. Ayala, Esq.
(*pro hac vice* forthcoming)
Ryan M. Moore, Esq.
(*pro hac vice* forthcoming)
KLEHR HARRISON
HARVEY BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA  19103
phone (215) 569-2700
fax (215) 568-6603
jkrause@klehr.com
tayala@klehr.com
rmoore@klehr.com

*Counsel for Plaintiff Driver Opportunity
Partners I LP*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on March 30 2023, a copy of the foregoing Motion is being served on the following persons, and this document has been electronically filed and is available for viewing and downloading from the Court's ECF system:

**VIA FIRST CLASS U.S. MAIL:**

J. Michael Adams, Jr.
6402 Jefferson Pointe Cir.
Clarion, PA 15025

Amy Bradley
514 Luzerne Street
Johnstown, PA 15905

Allan R. Dennison
990 Cape Marco Drive, #301
Marco Island, FL 34145

Allan R. Dennison
212 Curtis Drive
Johnstown, PA 15904

Kim W. Kunkle
2221 Crabtree Lane
Johnstown, PA 15905

Margaret A. O'Malley
2232 Benchmark Lane
Johnstown, PA 15905

Daniel A. Onorato
2481 Matterhorn Drive
Wexford, PA 15090

Mark E. Pasquerilla
945 Mengher Blvd.
Johnstown, PA 15905

Sara A. Sargent
200 Whispering Pines Lane
Johnstown, PA 15905

3

Jeffrey A. Stopko
128 Luna Lane, #43
Johnstown, PA 15905

AmeriServ Financial Inc.
Main & Franklin Streets
P.O. Box 430
Johnstown, PA 15907

**VIA FIRST CLASS U.S. MAIL AND EMAIL:**

Stacey A. Scrivani
Stevens & Lee
111 N. Sixth Market Street
Reading, PA 19601
Tel: 610-478-2086
Fax: 610-988-0812
stacey.scrivani@stevenslee.com

*Counsel for Defendants*

/s/ *Jonathan S. Krause*
Jonathan S. Krause, Esq.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Driver Opportunity Partners I, L.P., | : | |
| | : | |
| *Plaintiff*, | : | Civ. A. No: 3:23-cv-00056-SLH |
| | : | |
| v | : | |
| | : | |
| J. Michael Adams, Jr., *et al.*, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

Jonathan S. Krause, Esq.
Thomas V. Ayala, Esq. (*pro hac vice* forthcoming)
Ryan M. Moore, Esq. (*pro hac vice* forthcoming)
KLEHR HARRISON
HARVEY BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA  19103
phone (215) 569-2700
fax (215) 568-6603
jkrause@klehr.com
tayala@klehr.com
rmoore@klehr.com

*Counsel for Plaintiff Driver Opportunity*
*Partners I, LP*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 5

    I.     AMERISERV'S INCUMBENT LEADERSHIP HAS CREATED AND ENCOURAGED A CULTURE OF UNDERPERFORMANCE. .......................... 6

    II.    DRIVER'S ENGAGEMENT WITH THE BOARD REVEALED PRETEXTUAL EXCUSES FOR THE CORPORATION'S UNDERPERFORMANCE AND DRIVER NOTIFIED THE BOARD THAT IT WOULD TAKE ITS CONCERNS TO ITS FELLOW SHAREHOLDERS. ................................................................. 6

    III.   THE INCUMBENT BOARD POSTURES ITSELF TO DISENFRANCHISE DRIVER'S RIGHTS AS A SHAREHOLDER AND IGNORE DRIVER'S REQUEST FOR CORPORATE BOOKS AND RECORDS. ............................... 8

    IV.   DRIVER TAKES ACTION TO RECTIFY THE DAMAGE CAUSED BY THE INCUMBENT BOARD AND NOMINATED DIRECTOR CANDIDATES FOR ELECTION AT THE 2023 ANNUAL MEETING. ............................................. 11

    V.    THE INCUMBENT BOARD ATTEMPTED TO RIG THE OUTCOME OF THE 2023 ANNUAL MEETING BY DECLARING DRIVER'S NOMINATION INVALID. ........................................................................................................ 13

    VI.   NO DATE HAS BEEN SET FOR THE 2023 ANNUAL MEETING AND THE COMPANY HAS NOT ISSUED ITS PRELIMINARY PROXY. ...................... 22

ARGUMENT ....................................................................................................................... 23

    I.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS  23

       A.   PLAINTIFF IS LIKELY TO SUCCEED ON ITS SECTION 14(A) CLAIMS... 23

       B.   PLAINTIFF IS LIKELY TO SUCCEED ON ITS CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER PENNSYLVANIA LAW. ..................... 27

          1.   DEFENDANTS' IMPROPER REJECTION OF DRIVER'S NOMINATION NOTICE WAS AN INVALID CORPORATE ACTION UNDER 15 PA. C.S. § 1793 ................................................................................................ 28

          2.   THE INCUMBENT BOARD'S RELIANCE ON A VOID AND OTHERWISE INAPPLICABLE INTERLOCKS BYLAW TO DISQUALIFY MR. COOPER IS AN INVALID CORPORATE ACTION UNDER 15 PA. C.S. § 1793..... 35

       C.   PLAINTIFF IS LIKELY TO SUCCEED ON ITS BREACH OF FIDUCIARY DUTIES CLAIM. ............................................................................................. 38

II.     PLAINTIFF SATISFIES THE REMAINING THREE PREREQUESTIES FOR INJUNCTIVE RELIEF ........................................................................................ 40

   A.   PLAINTIFFS WILL SUFFER IRREPARABLE INJURY WITHOUT POSTPONEMENT OF THE ANNUAL MEETING TO ELECT DIRECTORS. 40

   B.   THE BALANCE OF HARDSHIPS WEIGHS IN PLAINTIFF'S FAVOR ......... 41

   C.   THE PUBLIC INTEREST FAVORS GRANTING PRELIMINARY RELIEF. . 41

CONCLUSION ............................................................................................................. 42

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AmeriServ Financial Inc. v. Driver Opportunity Partners I, L.P., et al.*,
   No. 2023-1002 (Pa. Ct. Com. Pl. Mar. 17, 2023) ..............................................42, 43

*Bassett v. Pa. Interscholastic Athletic Ass'n, Inc.*,
   2022 WL 420594 (W.D. Pa. Feb. 11, 2022) ...........................................................24

*Goldman v. Trans-United Indus., Inc.*,
   171 A.2d 788 (Pa. 1961) ........................................................................................11

*High River Ltd. P'ship v. Mylan Labs., Inc.*,
   383 F. Supp. 2d 660 (M.D. Pa. 2005) .....................................................................28

*Jaroslawicz v. M&T Bank Corp.*,
   962 F.3d 701 (3d Cir. 2020)........................................................................25, 26, 33

*Jewelcor Mgmt., Inc. v. Thistle Grp. Holdings, Co.*,
   60 Pa. D. & C. 4th 391 (Pa. Ct. Com. Pl. 2002) ............................................. *passim*

*Kos Pharms., Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004).....................................................................................24

*Robinson v. Penn Central Co.*,
   336 F. Supp. 655 (E.D. Pa. 1971) ..........................................................................27

*Rosenbaum v. CytoDyn Inc.*,
   2021 WL 4775140 (Del. Ch. Oct. 13, 2021) ...........................................................35

*Shaev v. Saper*,
   320 F.3d 373 (3d Cir. 2003).....................................................................................25

*Wurtzel v. Park Towne Place Apartments Ltd. P'ship*,
   62 Pa. D. & C. 4th 330 (Pa. Ct. Com. Pl. 2001) .....................................................41

**Statutes**

15 Pa. C.S. § 104..........................................................................................................28

15 Pa. C.S. § 110..........................................................................................................28

15 Pa. C.S. § 512..........................................................................................................39

15 Pa. C.S. § 1504(a) ..............................................................................................38, 39

15 Pa. C.S. § 1508...........................................................................................9, 10, 11

15 Pa. C.S. § 1722.................................................................................................20, 38

15 Pa. C.S. § 1725.................................................................................................31, 39

15 Pa. C.S. § 1755........................................................................................................23

15 Pa. C.S. § 1758(e)..........................................................................................14, 30, 33

15 Pa. C.S. § 1791(a)....................................................................................................29

15 Pa. C.S. § 1793(a)....................................................................................................29

15 U.S.C. § 78n(a)(1)....................................................................................................24

28 U.S.C. § 2201(a)......................................................................................................28

**Other Authorities**

17 C.F.R. § 240.14a–9 ......................................................................... *passim*

**INTRODUCTION**

The shareholder franchise is a cornerstone of corporate democracy that cannot be subjugated to individual board members' desire to remain in control. Officers and directors are not permitted to take actions that entrench themselves; stockholders elect directors, not the other way around. Nevertheless, for the past five months, the incumbent members of the board of directors ("Board") of Defendant AmeriServ Financial Corporation ("AmeriServ," the "Corporation," or "ASRV") have engaged in a campaign of disenfranchisement directed at the Corporation's largest shareholder, Driver Opportunity Partners I, LP ("Driver"), and Driver's intention to nominate three directors for election at the 2023 Annual Meeting of the Shareholders ("2023 Annual Meeting").

AmeriServ's pattern of disenfranchisement began with the Board's denial of Driver's statutory right to receive certain corporate books and records related to, among other things, Driver's concerns regarding the Board's management of the Corporation. Indeed, AmeriServ and its Board have failed to engage with Driver's books and records requests on any level, summarily denying those requests and refusing to hand over straight-forward documents to which Driver surely has a right, including the Corporation's shareholder list. And, once Driver took action to nominate a slate of directors for election at the 2023 Annual Meeting, the incumbent Board went further yet, declaring Driver's nomination invalid and seeking to ensure that its own hand-picked candidates (*i.e.,* successors) would run unopposed at the 2023 Annual Meeting. Most recently, the Board intentionally caused AmeriServ to make false statements of material fact in publicly filed proxy solicitation materials, all in furtherance of its scheme to rig the election in its favor by eliminating any opposition candidates.

The significance of the incumbent Board's actions is difficult to overstate, given its far-reaching implications.  At the heart of the corporate enterprise is the principle of separation of ownership and management.  Under Pennsylvania law, directors are charged with the management of the business and affairs of a corporation, a task generally delegated (under the board's supervision) to management   The only opportunity for shareholders—the owners of the corporation—to have a voice in the management of the business and affairs of the entity they own is through the annual election of directors.  Most shareholders are passive and apathetic, without the time or the inclination to devote enough effort to keep themselves aware of the details of the corporation's performance, to campaign for corporate change, or even attend the annual meeting of the shareholders.  Each shareholder may, however, vote by proxy.  Consequently, the real action in corporate elections is in the proxy solicitation process.

The corporate proxy contest involves a fight between the incumbent board and dissatisfied shareholders over the control of the corporation, typically coming to a head at the shareholders' annual election of the directors.  Generally, although an incumbent board is reimbursed for its proxy expenses from the corporate coffers, shareholders dissatisfied with a corporation's financial performance must finance their own bid, which is an extraordinary expense.  This reality disincentivizes many shareholders from nominating director candidates for election and otherwise seeking to change the composition of the board of directors charged with safeguarding their investment.

When a shareholder dedicates the time, expense, and effort to wage a proxy contest, as is its right under Pennsylvania law, the Pennsylvania legislature deemed it imperative for shareholders to have an ability to engage courts as a check on the incumbent board's obligation to

apply its bylaws regarding that process in a fair and reasonable manner, consistent with its fiduciary obligations to shareholders and not for self-entrenchment.

For the last five months, Driver has repeatedly communicated to AmeriServ's incumbent Board its detailed concerns about the Corporation's abysmal underperformance, the need for management change, and Driver's intent to band together with fellow AmeriServ shareholders to vote for three new directors at the 2023 Annual Meeting.  Specifically, on November 8, 2022, Driver wrote to Allan R. Dennison, Chair of AmeriServ's Board, to express its concern about ASRV's long-term underperformance and engage in what Driver had hoped would be a productive dialogue.  Driver's concerns stemmed from ASRV's habitual underperformance relative to peers, based on its return on assets ("ROA"), a standard measure of a bank's profitability.  ASRV's dramatic underperformance relative to its peers is not surprising, given that, as Driver has identified, the incentive compensation for ASVR's named executive officers ("NEOs") is tied to producing only a fraction of peer ROA.  In other words, ASRV's Board has not just failed to hold ASRV's management accountable for years of underperformance, it actually has rewarded the underperformance by having inappropriately low performance metrics, to the detriment of ASRV's shareholders like Driver.

Because Driver's discussions with the incumbent Board were not making progress, on December 14, 2022, Driver notified the Board that it would be making its case for change publicly to other AmeriServ shareholders, as well as highlighting what Driver considered to be the fundamental inconsistency of the Board blaming union labor for its poor overall financial performance while pinning hopes of better performance on getting more business from unions, particularly in the absence of any disclosures in AmeriServ's public filings with the SEC that would logically lead to the conclusion that a partially unionized workforce (rather than a

complacent management team that has been incentivized to underperform) was the cause of AmeriServ's decades of underperformance relative to peer institutions.

In connection, on January 17, 2023, Driver timely delivered a written notice to AmeriServ of its intention to nominate three candidates for director at the 2023 Annual Meeting and simultaneously filed DFAN 14A proxy soliciting material with the U.S. Securities and Exchange Commission ("SEC"). Driver explained that its reasons for taking such action were based on ASRV's track record of abysmal financial performance relative to publicly traded peers and, in particular, the manner in which ASRV's Board had attempted to shirk responsibility for such poor performance by blaming undisclosed and ill-defined "unique economic realities." Driver expressed confidence that its message of change would resonate far more with shareholders who have seen little from their investment in ASRV than directors who seem more interested in making excuses for the status quo.

With the 2023 Annual Meeting approaching—the Board has indicated that it has been set for May 18, 2023—the incumbent Board has responded to Driver's promotion of change by stonewalling Driver's fundamental rights as a shareholder. For instance, as explained above, the incumbent Board has deprived Driver of its right to basic corporate information—including, but not limited to, the Corporation's shareholder list—in an effort to prevent Driver from communicating directly with other AmeriServ shareholders. And, most recently, the incumbent Board has misleadingly and inequitably applied its "advance notice" bylaw, which is both unfair and unreasonable under Pennsylvania law, to defeat Driver's efforts to effectuate change. The Board has taken these actions for no reason other than to evade responsibility for the Corporation's underperformance, avoid a debate on the merits at the 2023 Annual Meeting on the issues Driver has been raising, the Corporation's long- and short-term prospects, and what future course is in

the best interests of the shareholders, and further entrench itself in violation of Pennsylvania and federal law.

The incumbent Board's interference with the shareholders' fundamental rights to nominate candidates for election must be halted immediately.  There is no justification in law or equity to undermine the shareholder franchise simply because the incumbent Board is scrambling to implement measures to entrench themselves at the 2023 Annual Meeting and prevent Driver from effectuating its right to nominate candidates for election to director at that Meeting.  These extraordinary circumstances should be remedied by, among other things, preserving the status quo, which is to prevent the Board from holding the 2023 Annual Meeting until the parties' rights in this action have been determined, including, but not limited to, Driver's right to nominate candidates for election to the Board.  Because the incumbent Board has demonstrated the Corporation's unwillingness to abide by its obligations and honor the rights of its shareholders absent judicial intervention, this Court's immediate action is necessary to protect Driver's rights.

## BACKGROUND

Driver is a limited partnership that invests in banking organizations it believes are undervalued relative to peer institutions and in need of a catalyst to unlock trapped shareholder value. (Verified Complaint for Declaratory, Injunctive, and Other Relief ("Compl.") ¶ 10.)  Driver is an AmeriServ shareholder that owns 201,000 shares of AmeriServ's common stock.  (*Id.* ¶ 11.)  Based on publicly available information, together with its general partner, Driver Management Company LLC, Driver is the beneficial owner of more shares of AmeriServ common stock than any other AmeriServ shareholder, and owns almost as many shares as all incumbent Board members combined.  (*Id.*)  AmeriServ is incorporated under the laws of Pennsylvania and its common stock is publicly traded on the NASDAQ exchange under the ticker "ASRV."  (*Id.* ¶ 12.)

Each of the individuals named as Defendants in this action currently are directors that sit on AmeriServ's Board. (*Id.* ¶¶ 13–21.)

## I.    AMERISERV'S INCUMBENT LEADERSHIP HAS CREATED AND ENCOURAGED A CULTURE OF UNDERPERFORMANCE.

After becoming a shareholder in August 2022 and reviewing how AmeriServ compensated its officers based on publicly available information, Driver became concerned that AmeriServ's Board, through those compensation practices, was creating incentives for underperformance. (*Id.* ¶¶ 27–28.) Driver believes that those incentives have adversely affected the value of all AmeriServ shareholders' investments in AmeriServ's common stock. (*Id.* ¶ 28.)

On November 8, 2022, Driver wrote to Mr. Dennison, Chair of AmeriServ's Board, to express its "concern about ASVR's long term underperformance" and to "request a call" to discuss those concerns. (*Id.* ¶ 29.) Specifically, Driver explained the "ASVR has habitually underperformed peers based on certain return on assets ('ROA'), a standard measure of a bank's profitability" and that "ASRV's dramatic underperformance relative to peers is not particularly surprising," given that "the incentive compensation for ASRV's named executive officers ["NEOs"] is tied to producing only a fraction of peer ROA." (*Id.*) In particular, Driver explained that AmeriServ's Board had "not just failed to hold ASRV's management accountable for years of underperformance, it has actually provided an incentive for such underperformance." (*Id.*) That fact along struck Driver "as irresponsible in the extreme and representative of a fundamental disdain for ASRV's shareholders." (*Id.*; App'x 1)

## II.    DRIVER'S ENGAGEMENT WITH THE BOARD REVEALED PRETEXTUAL EXCUSES FOR THE CORPORATION'S UNDERPERFORMANCE AND DRIVER NOTIFIED THE BOARD THAT IT WOULD TAKE ITS CONCERNS TO ITS FELLOW SHAREHOLDERS.

For the last five months, Driver has communicated repeatedly with the incumbent Board about its concerns regarding AmeriServ's underperformance relative to its peers and Driver's

intent to exercise its right to communicate with fellow AmeriServ's shareholders about that and other issues. (*Id.* ¶ 30.) On November 29, 2022, Driver spoke with Mr. Dennison on the telephone, and wrote to him the same day, regarding its concerns with AmeriServ's underperformance. (*Id.* ¶ 31.) During that telephone conversation, Mr. Dennison blamed AmeriServ's historical underperformance on, among other things, costs associated with a union labor force. (*Id.*) In its November 29, 2022 letter to Mr. Dennison, Driver explained that the "primary cause of ASRV's long standing underperformance" was not its use of a union labor force but "a complacent management team and a board of directors that is unable or unwilling to hold that management team accountable for poor performance." (*Id.*; App'x 3.)

Having not received a satisfactory response, on December 14, 2022, Driver again wrote to the incumbent Board regarding these issues; and Driver informed them that it would be "making [its] case for change publicly to other AmeriServ shareholders," by, among other things, "highlighting what [it] consider to be the fundamental inconsistency of blaming union labor for AmeriServ's poor performance while, at the same time, pinning the hopes of better performance on getting more business from unions." (*Id.* ¶ 32; App'x 5.)

Driver's engagement with the Board continued. During the course of those discussions, Mr. Dennison continually referenced certain undefined "unique economic realities of AmeriServ," which he used to justify the Corporation's historic underperformance. (*Id.* ¶ 33.) During those discussions, Mr. Dennison referenced, among other things, AmeriServ's union relationships and unionized workforce as contributing to AmeriServ's historic underperformance, and suggested that AmeriServ was "unique among financial institutions in that a portion of [its] workforce [was] unionized[,] which makes financial comparisons to broader peer groups more difficult." (*Id.*; App'x 7.)

7

Dissatisfied with AmeriServ's explanation for its historic underperformance, Driver again wrote to Mr. Dennison, noting, that it "may very well make [its] case for change publicly to other ASRV, and may begin doing so in the near term." (*Id.* ¶ 34.) Driver also made clear that it "would absolutely welcome any rebuttal by the board that is based on the notion that ASRV shareholders should expect below peer returns because of ASRV's 'unique economic realities.'" (*Id.*; App'x 7.)

On January 3, 2023, Driver again wrote to Mr. Dennison about AmeriServ's so-called "unique economic realities," explaining that it "would expect that any unique economic realities affecting [AmeriServ] would be considered to be material risks of investing in ASRV's common stock." (*Id.* ¶ 35.) But, as Driver pointed out, "ASRV has not disclosed any risk factors relating to those unique economic realities" in its public filings or disclosures to its shareholders. (*Id.*) Accordingly, Driver requested "a detailed explanation of the unique economic realities impacting ASRV's financial condition and results of operations as soon as possible that quantifies the impact of those unique economic realities" on the Corporation's performance, among other things. (*Id.*; App'x 8.) That detailed explanation never came.

## III. THE INCUMBENT BOARD POSTURES ITSELF TO DISENFRANCHISE DRIVER'S RIGHTS AS A SHAREHOLDER AND IGNORE DRIVER'S REQUEST FOR CORPORATE BOOKS AND RECORDS.

During the course of its discussions with the incumbent Board, Driver began to suspect that it was not getting the full story. Accordingly, over the course of the past five months, Driver has invoked its right to demand for inspection the corporate books and records of AmeriServ pursuant to 15 Pa. C.S. § 1508.

Driver made its first demand on November 22, 2022, when it sent a written verified demand for the inspection of books and records pursuant to 15 Pa. C.S. § 1508 to AmeriServ (the "First Demand"). (Compl. ¶ 36; *see also id.*, App'x 2.) The First Demand requested access to certain

books and records that were tailored to Driver's stated concerns about AmeriServ's performance and incentive compensation policies and practices, as well as request for the Corporation's shareholder list, among other things.  (*Id.* ¶ 36.)  Driver's stated purposes for its First Demand was (1) to investigate whether the Corporation was being properly managed in the best interest of shareholders with regard to its corporate performance goals and management incentives; (2) to investigate the Board's annual renewals of the chief executive officer's employment contract and their effect on the value of shareholders' investments; and (3) to enable Driver to communicate with other shareholders about the Corporation's management, performance and strategic direction. (*Id.*)  AmeriServ flatly rejected Driver's First Demand, refusing to engage Driver regarding the nature or scope of the First Demand without offering any valid basis for doing so.  (*Id.*; *see also id.*, App'x 4.)

After Mr. Dennison pointed to the certain undefined and undisclosed "unique economic realities" as poor excuses for AmeriServ's financial performance, on January 20, 2023, Driver sent AmeriServ another Section 1508 demand (the "Second Demand") requesting information about those purportedly "unique economic realities" and their effects on the Corporation's profitability and shareholder value and returns.  (*Id.* ¶ 37; *see also id.*, App'x 14.)  Driver's stated purposes for its Second Demand were (1) to investigate whether the Corporation was being properly managed in the best interest of shareholders with regard to the nature and extent of the challenges that its unique economic realities (*e.g.*, unionized workforce) pose to the Corporations management, profitability and shareholder value and returns; (2) how such realities are disclosed to shareholders and prospective shareholders; and (3) measures for managing potential liability under federal securities laws relating to disclosure of material information to investors.  (*Id.* ¶ 37.)  Like it did with Driver's First Demand, AmeriServ flatly rejected Driver's Second Demand and refused to

engage in any manner with Driver about its valid and proper requests under Pennsylvania law. (*Id.*; *see also id.*, App'x 17.)

Finally, on January 25, 2023, Driver sent AmeriServ a third Section 1508 demand (the "Third Demand") requesting information about the circumstances under which two former employees—Jack W. Babich and Robert E. Werner III—left AmeriServ.  (*Id.* ¶ 38; *see also id.*, App'x 15.)  The circumstances reported to Driver by a former senior vice president at AmeriServ, if true, would constitute extremely reprehensible and possibly unlawful conduct by a former senior officer of the Corporation, which, among other things, could give rise to a risk of criminal charges. The former senior vice president who reported the circumstances to Driver apparently received an extraordinarily generous severance package (twenty months of full pay and benefits with a 401K match).  Driver's stated purposes for its Third Demand were (1) to make its own determination as to whether the Corporation is being properly managed and (2) to investigate corporate waste, wrongdoing, mismanagement, or possible breaches of management's or the Board's fiduciary duties.  (*Id.* ¶ 38.)  Unsurprisingly, AmeriServ flatly rejected Driver's Third Demand and refused to engage with Driver regarding any of the requests.  (*Id.*)  To the contrary, in response to the Third Demand, AmeriServ lobbed unfounded threats at Driver in a further attempt to defeat Driver's efforts to influence change at the Corporation and obfuscate the matter at hand.  (*Id.*; App'x 19.)

To date, AmeriServ has not responded substantively or offered to negotiate with respect to any of Driver's three Section 1508 demands.  Indeed, AmeriServ has refused to disclose any documents to Driver, including the Corporation's shareholder list, to which Driver plainly has a right to obtain.  *See, e.g.*, *Goldman v. Trans-United Indus., Inc.*, 171 A.2d 788, 791 (Pa. 1961). Having failed to explain any legitimate reason to stonewall Driver's efforts to exercise its rights as a shareholder under Pennsylvania law, Driver is left to suspect that AmeriServ's motivation

solely is to prevent communications between Driver and other AmeriServ shareholders.  (Compl.

¶ 40.)

## IV.   DRIVER TAKES ACTION TO RECTIFY THE DAMAGE CAUSED BY THE INCUMBENT BOARD AND NOMINATED DIRECTOR CANDIDATES FOR ELECTION AT THE 2023 ANNUAL MEETING.

Having gotten nowhere with the Corporation's incumbent Board, on January 17, 2023,

Driver timely delivered to AmeriServ in writing of its intention to nominate three director

candidates for election to the Board at the Corporation's 2023 Annual Meeting (the "Nomination

Notice").  (*Id.* ¶ 41; *see also id.*, App'x 9.)  Those three candidates were J. Abbott R. Cooper,

Julius D. Rudolph, and Brandon L. Simmons.  (*Id.*)  That same day, Driver also wrote to J. Michael

Adams, Jr., Chair of AmeriServ's Nomination and Corporate Governance Committee, to transmit

Driver's Nomination Notice.  (*Id.* ¶ 42.)  In that letter, Driver explained that

> Based on AmeriServ Financial Inc.'s ("ASRV") long term track record of abysmal
> financial performance relative to publicly traded peers and, in particular, the
> manner in which ASRV's board of directors (the "ASRV Board") has attempted to
> shirk responsibility for that poor performance by blaming undisclosed and ill-
> defined "unique economic realities," *I hope you understand that I believe the ASRV*
> *Board needs to be reconstituted as determined by ASRV's long suffering*
> *shareholders, not the same entrenched directors responsible for years of*
> *underperformance. Transmitted herewith is our notice of nomination of three*
> *candidates (the "Nominees") for election to the ASRV Board at ASRV's 2023*
> *annual meeting of shareholders (the "2023 Annual Meeting"). I am confident that*
> *our message of change will resonate far more with shareholders who have seen*
> *little from their investment in ASRV than directors who seem more interested in*
> *making excuses for the status quo*. It is past time for the ASRV Board to face the
> very un-unique reality that the current level of underperformance is simply
> unacceptable and make way for new directors with a commitment to putting
> shareholders first.

(*Id.*; *see also* App'x 10.)

On January 18, 2023, Driver wrote to the incumbent Board, "now that a contested election

is at hand," and inquired "whether the Board will make the shareholder list and other related

information requested available or will, instead, continue to seek to impede Driver's fundamental

rights as an ASRV shareholder, while wasting shareholders' money on meritless litigation."  (*Id.* ¶ 43; *see also id.*, App'x 11.)  AmeriServ, however, ignored this request; and as of the date of this filing, still has not agreed to produce the requested shareholder list or any of the other corporate books and records requested by Driver.  (*Id.* ¶ 43.)

The next day, Driver reiterated that in its conversations with AmeriServ and its incumbent Board, it had "been very clear that [it] intended to make [its] case for change directly to ASRV shareholders" and "encouraged" AmeriServ "to make whatever might possibly be the case for more of the same directly to ASRV shareholders as well."  (*Id.* ¶ 44.)  Indeed, Driver explained, as it had done before, that AmeriServ's financial performance was unacceptable, given that "the trading price for ASRV's common stock [was] approximately the same [on January 19, 2023] as it was in 1985."  (*Id.* ¶ 45.)  Driver thus believed "that all [AmeriServ's] constituencies . . . would benefit from a change in the composition of AmeriServ's board of directors—or really anything— that offers the possibility of a more vibrant future for ASRV."  Driver was and remains "confident that a majority of ASRV shareholders feel the same way."  (*Id.* ¶ 45; App'x 12.)

On January 27, 2023, Driver wrote to Mr. Dennison regarding Driver's concerns about the circumstances under which the two previously discussed former employees (Messrs. Babich and Werner) left AmeriServ—that is, the subject matter of Driver's Third Demand.  (*Id.* ¶ 46.)  Driver explained that its concerns were of paramount importance not just to Driver but all ASRV shareholders.  (*Id.*; *see also id.*, App'x 16.)   Driver also explained in its letter that it intended to file its January 27, 2023 letter "publicly (both in order to communicate directly with the Board as well as to encourage shareholders and others with relevant information to contact me) absent sufficient evidence that the Board is fully aware of this matter and taking appropriate steps to protect the interests of all ASRV shareholders."  (*Id.*, App'x 16.)

## V.   THE INCUMBENT BOARD ATTEMPTED TO RIG THE OUTCOME OF THE 2023 ANNUAL MEETING BY DECLARING DRIVER'S NOMINATION INVALID.

On January 31, 2023, counsel for AmeriServ wrote to counsel for Driver stating AmeriServ's view that Driver's Nomination Notice was incomplete and made disclosures that "require further clarification in order to allow the Company to determine if such disclosures comply with the Bylaws" (the "Deficiency Letter"). (*Id.* ¶ 47; App'x 18.) In its Deficiency Letter, AmeriServ stated that Driver's Nomination Notice "fails to provide such disclosure for any immediate family members of the Nominees," but the incumbent Board said nothing of the details of claimed disclosure omission, even though the details were in AmeriServ's firsthand knowledge and possession. (*Id.* ¶ 48.) AmeriServ also did not express any view that the deadline for Driver to cure the claimed omissions had already passed or its view that the purported deficiencies were otherwise uncurable. (*Id.*)

In its Deficiency Letter, AmeriServ's incumbent Board relied on the "Advance Notice" Bylaw (Section 1.3) in AmeriServ's current Bylaws. (*Id.* ¶ 49.) The Advance Notice Bylaw includes certain byzantine requirements of shareholders who choose to nominate one or more directors for election to the Board, including, in relevant part, Section 1.3(iv), which requires that the shareholder disclose "such other information regarding each nominee . . . as would have been required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission had the nominee been nominated, or intended to be nominated, by the Board of Directors." (*Id.*, App'x 33 at 5–6.) But, in declaring Driver's Nomination Notice invalid, the Board misplaced reliance on subsection (vii), which is unfair and unreasonable under 15 Pa. C.S. § 1758(e), both on its face and as applied by the Board in determining that Driver's Nomination Notice purportedly was invalid.

Despite declaring Driver's Nomination Notice invalid, the Board, through its counsel, stated in the Deficiency Letter that the "Company's management and the Board are and will remain open to engagement with" Driver, "including engagement related to its submission of nominations for the Annual Meeting." (*Id.* ¶ 52.)

On February 8, 2023, Driver filed its preliminary proxy statement with the SEC. (*Id.* ¶ 53; App'x 20.) In its preliminary proxy, Driver explained that it "believe[d] change in the composition of the Company's board of directors . . . [was] required to ensure that the Company is being run in a manner that is consistent with the shareholders' best interests" and that, to that effect, Driver had "nominated three (3) highly qualified director candidates who will work to preserve and increase shareholder value." (*Id.* ¶ 53.) Driver thus sought the support of all AmeriServ shareholders in effectuating that change. (*Id.*)

Driver's preliminary proxy also disclosed, as to Driver's nominee Mr. Rudolph, that certain of Mr. Rudolph's immediate family members had been parties to transactions with the Company in the ordinary course of business since its last fiscal year in an amount that exceeded $120,000. (*Id.* ¶ 54.) Specifically, Driver disclosed that Mr. Rudolph's father, Bill Rudolph, had a personal line of credit with the Company in the amount of $4 million, and that Mr. Rudolph's brother-in-law, Benyamin Dere, also had several commercial mortgages with the Company for the purchase of rental units (the "Transactions"). (*Id.*)

On February 10, 2023, Driver responded to AmeriServ's Deficiency Letter. (*Id.* ¶ 58; App'x 21.) In its response, Driver voluntarily disclosed that Mr. Rudolph's father had a personal line of credit with the Company in the amount of $4 million, and that Mr. Rudolph's brother-in-law had several commercial mortgage loans from the Company in connection with the purchase of rental units, which total, in the aggregate, approximately $8 million. (*Id.* ¶ 59.) In addition,

14

Driver voluntarily addressed each purported deficiency identified in the Deficiency Letter in good faith on a point-by-point basis. (*Id.*)

On March 6, 2023, Driver filed a DFAN 14A proxy soliciting material with the SEC stating that it "strongly advises all shareholders of the Company to read the proxy statement and other proxy materials as they become available because they will contain important information"; and point out that those "proxy materials will be available at no charge on the SEC's web site." (*Id.* ¶ 60; *see also id.*, App'x 22.) Driver's amended proxy also stated that it would "provide copies of the proxy statement without charge, when available, upon request," and that such requests "should be direct to [Driver's] proxy solicitor." (*Id.* ¶ 60.)

On March 7, 2023, counsel for AmeriServ wrote counsel for Driver explaining that the Corporation's incumbent management intended to nominate three director candidates for election to the Board. (*Id.* ¶ 61; App'x 23.) These director candidates will compete with Driver's candidates for the three open director seats. (*Id.* ¶ 61.) That AmeriServ affirmatively reached out to inform Driver of its intention to nominate three candidates for election to the Board was one more effort to mislead Driver. (*Id.* ¶ 62.) Specifically, and as described in its letter, the incumbent Board sent Driver the notice of ASRV's director-nominees pursuant to SEC Rule 14a-19(d), which required ASRV to notify Driver of the names of all nominees for whom AmeriServ intended to solicit proxies in connection with the 2023 Annual Meeting specifically because Driver was conducting a proxy solicitation of its own in connection with the 2023 Annual Meeting. (*Id.*) As a sophisticated investor, Driver knew this detail regarding Rule 14a-19(d), and thus reasonably took AmeriServ's notice under that Rule as an indication that AmeriServ knew and expected Driver to participate in the proxy solicitation process in connection with the 2023 Annual Meeting

and intended to "remain open to engagement with" Driver, "including engagement related to its submission of nominations for the Annual Meeting." (*Id.*)

Nevertheless, in an about face, on March 15, 2023, the incumbent Board disclosed to Driver a superior knowledge of the details of the Transactions for the first time, in a hoped-for "gotcha" moment that would end Driver's campaign for positive change once and for all (the "March 15 Letter"). (*Id.* ¶ 63; App'x 24.) In its March 15 Letter, the incumbent Board stated the false and misleading statements that Driver's Nomination Notice "does not constitute valid notice of nominations for the Annual Meeting," and, for the first time, stated that "Driver does not have the right to nominate any candidates for election as directors at the Annual Meeting." (*Id.* ¶ 64.)

In its March 15 Letter, the incumbent Board focused its argument on the very same Transactions about which it had known all along, but purposefully hid from Driver in an effort to sabotage Driver's nomination process. (*Id.* ¶ 65.) Specifically, AmeriServ disingenuously asserted that the Corporation "believes" that "Mr. William Rudolph has two lines of credit that exceed $4 million in the aggregate" and the "Company believes that the total outstanding balance on Mr. William Rudolph's two personal lines of credit exceeds $4 million." (*Id.*) That information was not a "belief" of the Corporation—the Corporation is a counterparty to those very agreements and has independent knowledge of them. (*Id.*) In all events, this information disclosed by the Corporation to Driver on March 15, 2023 was within the Corporation's knowledge all along, but the Corporation waited 57 days after Driver's Nomination Notice to disclose it. (*Id.*)

Also on March 15, 2023, AmeriServ publicly filed proxy soliciting material as a "DEFA14A" statement stating:

> On March 15, 2023, counsel to AmeriServ Financial, Inc. (the "Company") notified counsel to Driver Opportunity Partners I LP (collectively with its affiliates, "Driver") of certain deficiencies related to the Driver's purported notice of shareholder nomination of individuals for election as directors at the Company's

2023 annual meeting of shareholders (the "Annual Meeting") and that Driver had failed to satisfy the requirements of the Company's Amended and Restated Bylaws (the "Bylaws"). Pursuant to Article 1, Section 1.3(b) of the Bylaws, only such persons who are nominated pursuant to the procedures set forth in the Bylaws are eligible to stand for election to the Company's board of directors. Driver failed to meet the requirements of Article 1, Section 1.3 of the Bylaws.  Accordingly, the Company has determined that Driver's purported notice of director candidate nominations is invalid. A copy of this letter is filed with this Current Report on Form 8-K as Exhibit 99.1 and is incorporated herein by reference. The Company issued a related press release, a copy of which is filed with this Current Report on Form 8-K as Exhibit 99.2 and is incorporated herein by reference

(*Id.* ¶ 67; App'x 25.)  And in its March 15, 2023 Press release included as part of ASRV's proxy soliciting material, ASRV stated:

"Company") (NASDAQ: ASRV) today announced that its Board of Directors (the "Board") has determined that the notice of intent to nominate directors (the "Notice") submitted on January 17, 2023 by Driver Management Company LLC, Driver Opportunity Partners I LP and J. Abbott Cooper (collectively, "Driver") for the Company's 2023 Annual Meeting of Shareholders (the "Annual Meeting") is invalid.

The Notice submitted by Driver contains material defects, including a lack of disclosure pertaining to one director candidate's immediate family members – one of whom has several commercial mortgage loans with AmeriServ, which in total exceed several million dollars, and another of whom has a personal line of credit with the Company in the amount of $4 million. This disclosure was required to be made by Driver under the Company's clear and unambiguous bylaws, which require that nominating shareholders disclose to the Company certain important information regarding director nominees. Additionally, the Notice's purported nomination of Mr. Cooper – who is set to become a director of New York-based First of Long Island Corporation – does not comply with AmeriServ's interlocks bylaw that prohibits Board members and nominees to the Board from, among other things, concurrent directorships with other depository institutions . . . .

(*Id.* ¶ 68; App'x 26.)

On March 16, 2023, Driver responded, through counsel, to the incumbent Board's March 15 Letter, explaining that the incumbent Board's determination that the Driver's Nomination Notice is invalid was an unlawful and flagrant attempt at entrenchment that constituted a clear breach of the Board's fiduciary duties, among other things.  (*Id.* ¶ 70; App'x 27.)  Specifically, Driver reaffirmed its belief that its Nomination Notice complied with applicable law and satisfied

all prerequisites to exercising its fundamental right as a shareholder to nominate candidates of its choosing for election to director.  (*Id.* ¶ 70.)

Nevertheless, Driver gave the incumbent Board an opportunity to redirect its focus back towards its duties and obligation to the Corporation's shareholders, and strongly urged the Board to reconsider its decision not to recognize the validity of Driver's nominees for election to the Board.  (*Id.* ¶ 71.)  Driver made clear, however, that if the Board's misfeasance was not remedied forthwith, Driver would commence litigation seeking such relief against the Board and the Company.  (*Id.*)

The next day, on March 17, 2023, Driver filed amendment no. 1 to its preliminary proxy statement.  (*Id.* ¶ 72; App'x 28.)  In that preliminary proxy statement, Driver stated, in pertinent part, that on

> March 15, 2023, the Company notified Driver by letter that it had determined that Driver's notice of nomination submitted on January 17, 2023 was invalid and one of Driver's nominees was ineligible for election to the Board. The Company has filed the letter as Exhibit 99.2 to its Current Report on Form 8-K filed on March 15, 2023 with the U.S. Securities and Exchange Commission. Driver believes that there is no justification for the conclusions reached in the Company's letter and will challenge the Company's determination."

(*Id.* ¶ 73.)  Driver's March 17 preliminary proxy statement also included an updated disclosure regarding the matter challenged by AmeriServ in its March 15, 2023 letter, explaining that

> Mr. Rudolph's father, William C. Rudolph, has a personal line of credit with the Company in the amount of $4 million that is being upsized to $5 million. Mr. Rudolph's brother-in-law, Benyamin Dere, has several commercial mortgage loans from the Company in connection with the purchase of rental units, which total, in the aggregate, approximately $8 million. Neither Driver nor Mr. Rudolph has any reason to believe that either the line of credit nor the commercial mortgage loans were not (i) made in the ordinary course of business nor (ii) made on substantially the same terms, including interest rates and collateral, as those prevailing at the time for comparable loans with persons not related to the Company. In addition, neither Driver nor Mr. Rudolph has any reason to believe that either the line of credit nor the commercial mortgage loans involved more than the normal risk of collectability or presented other unfavorable features.

(*Id.* ¶ 74.)

Also on March 17, 2023, Driver wrote to the SEC regarding its February 8, 2023 disclosure in its preliminary proxy statement.  (*Id.* ¶ 75; App'x 29.)  In that letter, Driver addressed AmeriServ's invocation of its Interlocks Bylaw in its March 15 Letter, in which AmeriServ claimed that the Interlocks Bylaw rendered Mr. Cooper ineligible to serve on the Board.  (*Id.* ¶ 76.) In its letter to the SEC, Driver explained that "[e]ither the Interlocks Bylaw is a 'qualification' for service as a member of the Board, as contemplated by 15 Pa. C.S. § 1722(a) or it isn't and, presumably, is merely precatory at best."  (*Id.*)  Moreover, Driver explained that, "to the extent that ASRV might claim that the Interlocks Bylaw is a 'qualification,' it does not appear to Driver that it was validly included in the 2003 Bylaws due to the absence of any action by ASRV shareholders to amend the 2002 Bylaws."  (*Id.*)  Accordingly, Driver explained that it "does not believe that the Interlocks Bylaw has any legal effect, including on the eligibility of Mr. Cooper, if he is elected to the board of directors . . . of The First of Long Island Corporation ["FLIC"], to serve on the Board."  (*Id.*)  Driver thus explained to the SEC that it "does not believe that any new or revised disclosure is required" and "to the extent ASRV includes any statements in any solicitation material to the effect that, if elected to the FLIC Board, Mr. Cooper would need the approval of the board pursuant to the Interlocks Bylaw to be eligible to serve on the Board," those statements would constitute "a false or misleading statement of material fact in violation of Exchange Act Rule 14a-9."  (*Id.*)

On March 17, 2023, Driver filed a DFAN 14A proxy solicitation material with the SEC. (*Id.* ¶ 77; App'x 30.)  That DFAN 14A proxy solicitation material stated, among other things, that AmeriServ had issued a press release earlier that week which improperly declared that Driver's nominees for election to the Board "were invalid based on alleged problems with how they were

nominated." (*Id.* ¶ 77.)  Specifically, Driver explained that AmeriServ had singled out Abbott Cooper of New York hedge fund Driver Management Company LLC and that Driver and Mr. Cooper had plans to push back against AmeriServ's claims. (*Id.*)

Additionally, after receipt of AmeriServ's March 15 Letter, Driver began an investigation into whether there was any additional information about the Transactions to which it did not have knowledge.  On or about March 20, 2023, for the first time, Driver learned from Mr. Rudolph that his father actually had two personal lines of credit with the Company that total $5 million; and that Mr. Rudolph's brother-in-law actually had several commercial mortgage loans from the Company in connection with the purchase of rental units, which totaled, in the aggregate, approximately $8 million. (*Id.* ¶ 55.)

On March 21, 2023, Driver promptly filed amendment no. 2 to its proxy statement reflecting this information about the Transactions. (*Id.* ¶ 78;  App'x 31.)  In that amended proxy statement, Driver stated that it and Mr. Rudolph had no reason to believe, and know of no information that would indicate, that the Transactions (1) were not made in the ordinary course of business or (2) were not made on substantially the same terms (including interest rates and collateral) as those prevailing at the time for comparable transactions with persons not related to the Company. (*Id.* ¶ 78.)  In addition, the amended proxy statement disclosed that Driver and Mr. Rudolph had no reason to believe, and know of no information that would indicate, that the Transactions involved more than the normal risk of collectability or presented other unfavorable features. (*Id.*)

AmeriServ at all relevant times was a party to the Transactions and, accordingly, had knowledge of their details, including long before Driver served its Nomination Notice to ASRV on January 17, 2023. (*Id.* ¶ 57.)  In contrast to Driver and Mr. Rudolph—who honestly disclosed

the information reported to them by third parties when initially characterizing the Transactions (*i.e.*, transactions to which they were not parties)—the Corporation's incumbent Board deliberately sat silently for two months with knowledge of the details of the Transactions. (*Id.*) At no time between January 17, 2023 and January 26, 2023 (the date the Board claimed was the deadline for Nominations), or at any time before March 15, 2023 (57 days after Driver served its Nomination Notice), did the incumbent Board disclose to Driver its independent and preexisting knowledge of the details of the Transactions or request any additional information from Driver about its Nomination Notice. (*Id.*) In other words, the incumbent Board (1) unjustifiably rejected Driver's Nomination Notice for not disclosing information already known to AmeriServ and (2) failed to disclose the Board's knowledge of the Transactions that would prompt and enable Driver to cure the claimed deficiency until nearly two months after the Board's claimed nomination deadline. (*Id.*)

On March 21, 2023, Driver filed amendment no. 2 to its preliminary proxy statement with the SEC. (*Id.* ¶ 78; App'x 31.) In its amended preliminary proxy statement, Driver stated, in relevant part, that "[c]ertain of Mr. Rudolph's immediate family members have been a party to a transaction with the Company in the ordinary course of business since its last fiscal year in an amount that exceeds $120,000." (*Id.* ¶ 78.) The amended preliminary proxy statement thus further explained the two personal lines of credit held by Mr. Rudolph's father and the commercial mortgage loans held by Mr. Rudolph's brother-in-law. (*Id.*) It also disclosed that "[n]either Driver nor Mr. Rudolph has any reason to believe that either the lines of credit nor the commercial mortgage loans were not" (1) "made in the ordinary course of business" nor (2) "made on substantially the same terms, including interest rates and collateral, as those prevailing at the time for comparable loans with persons not related to the Company." (*Id.*) Driver also explained that

neither it nor Mr. Rudolph had "any reason to believe that either the lines of credit nor the commercial mortgage loans involved more than the normal risk of collectability or presented other unfavorable features." (*Id.*)

On March 22, 2023, Driver wrote to AmeriServ in further response to AmeriServ's Deficiency Letter of March 15, 2023. (*Id.* ¶ 79; App'x 32.)  In Driver's letter, it voluntarily addressed each purported deficiency in good faith on a point-by-point basis. (*Id.* ¶ 79.)  Driver also demanded that the incumbent Board confirm that it had identified all claimed deficiencies in the disclosures in Driver's Nomination Notice, or any of Driver's proxy statements, solicitation materials, or any of Driver's other correspondence to ASRV to date concerning the Driver's nominees. (*Id.*)  Driver added, "[i]f the Board intends to assert any other purported disclosure issues or other reason why it contends Driver's Nominations are invalid," it should "identify all such contentions and all facts and information supporting them immediately." (*Id.*)  To date, the Board has not identified any other claimed deficiencies in Driver's Nomination Notice beyond those in the Board's January 31, 2021 and March 15, 2023 letters, all of which Driver has satisfactorily addressed despite disagreeing that they were deficiencies that could warrant invalidating the Nomination Notice.

## VI.   NO DATE HAS BEEN SET FOR THE 2023 ANNUAL MEETING AND THE COMPANY HAS NOT ISSUED ITS PRELIMINARY PROXY.

Pennsylvania law mandates "at least one meeting of shareholders in each calendar year for the election of directors."  15 Pa. C.S. § 1755.  ASRV's current Bylaws state that the annual meeting of ASRV shareholders for the election of directors shall be held on the fourth Tuesday of April each year or on such other date as the Board of Directors may in their discretion determine. (*See id.*, App'x 33, § 1.1.)  Last year, the annual meeting was held on April 25, 2022. (*Id.* ¶ 83.)  As of the date of this filing, Defendants have not yet publicly announced a date for the 2023 Annual

Meeting; and ASRV also has not filed with the SEC a preliminary proxy statement for the 2023 Annual Meeting. (*Id.* ¶ 84.) Accordingly, assuming that the purported deficiencies identified by the Corporation in the Nomination Notice were legitimate (which they were not), the Corporation has suffered no prejudice by them, given there is still time for Driver to cure any and all legitimate defects prior to the 2023 Annual Meeting. (*Id.* ¶ 85.) Nevertheless, to date, the Corporation has refused to honor the validity of Driver's Nomination Notice or "remain open to engagement" with Driver, "including engagement related to its submission of nominations for the Annual Meeting, as it had committed itself months ago. (*Id.* ¶ 86.)

## ARGUMENT

A party's request for preliminary injunctive relief will be granted if the party shows: (1) a likelihood of success on the merits of its claim; (2) that it will suffer irreparable injury if the Court denies immediate relief; (3) that granting immediate relief will not result in even greater harm to Defendant; and (4) that the public interest favors granting relief. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *see also Bassett v. Pa. Interscholastic Athletic Ass'n, Inc.,* 2022 WL 420594, at *8 (W.D. Pa. Feb. 11, 2022). All of these factors favor Plaintiff's requested relief here; and this Court should enter an order preserving the status quo and enjoining AmeriServ from holding the 2023 Annual Meeting until the Parties' rights can be determined by this action.

## I.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

### A.   Plaintiff Is Likely To Succeed On Its Section 14(a) Claims.

Section 14(a) of the Securities Exchange Act of 1934, makes it unlawful to solicit a proxy "in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a)(1). The statute "seeks to prevent management or others from obtaining authorization for corporate actions

by means of deceptive or inadequate disclosures in proxy solicitations." *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 709–10 (3d Cir. 2020) (quoting *Seinfeld v. Becherer*, 461 F.3d 365, 369 (3d Cir. 2006)).  Rule 14a-9, in turn, "bars 'false or misleading' material statements and omissions in a proxy." *Id.* at 710 (quoting 17 C.F.R. § 240.14a-9(a)).

The Third Circuit has outlined a "three-step test for liability under Section 14(a)," which requires that a plaintiff show (1) "a proxy statement contained a material misrepresentation or omission which" (2) "caused the plaintiff injury" and (3) "that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Id.* (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007)).  Omissions in proxy statements can violate Section 14(a) and Rule 14a-9 "in one of two ways": where (1) "the SEC regulations specifically require disclosure of the omitted information in a proxy statement"; or (2) "the omission makes other statements in the proxy statement materially false or misleading." *Id.* (quoting *Seinfeld*, 461 F.3d at 369).

For misstated or omitted information to be "material," courts conduct a two-part inquiry. *Id.  First*, courts must determine "whether 'there is a substantial likelihood that a reasonable shareholder would consider [the omission or misrepresentation] important in deciding how to vote." *Id.* (quoting *Tracinda Corp.*, 502 F.3d at 228); *see also Shaev v. Saper*, 320 F.3d 373, 379 (3d Cir. 2003).  That question "involves an assessment of whether 'the disclosure of the omitted fact or misrepresentation would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *Jaroslawicz*, 962 F.3d at 710 (quoting *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 872 (3d Cir. 2000)).  *Second*, courts assess the materiality of a statement "at the time and in the light of the circumstances under which it was made." *Id.* (quoting *Seinfeld*, 461 F.3d at 369).  "[L]iability cannot be imposed on the basis

of subsequent events," and "the Monday morning quarterback" must "remain[] on the bench."  *Id.* (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002)).

As detailed above, Defendants disseminated intentionally false and misleading statements in their March 15, 2023 DEFA 14A proxy soliciting material as part of their campaign of entrenchment and disenfranchisement with respect to Driver's Nomination Notice, the 2023 Annual Meeting, and the election of directors, with such statements thereby materially misleading shareholders.  Specifically, Defendants, or their agents, prepared, reviewed, approved and disseminated the March 15, 2023 DEFA14A proxy soliciting material (which incorporated AmeriServ's March 15, 2023 Letter) and the accompanying March 15, 2023 press release, both of which contained materially false or misleading information.  In those proxy materials and press release, the incumbent Board intentionally made false and misleading public statements regarding Driver's Nomination Notice, including, but not limited to, that it "does not constitute valid notice of nominations for the Annual Meeting" and that "Driver does not have the right to nominate any candidates for election as directors at the Annual Meeting."  (*See* Compl., App'x 25 & 26.)  Those materials also made materially false, public-facing representations regarding Driver's nomination of Mr. Cooper as being noncompliant with AmeriServ's Interlocks Bylaw provision (Article II, Section 2.14) and that Mr. Cooper was ineligible to serve as a director of AmeriServ.  (*See id.*, App'x 25; *id.* App'x 26.)

Those misstatements were material because a reasonable shareholder would have considered them important in deciding how to vote on the nominations for directors up for election at the 2023 Annual Meeting.  Specifically, those misleading and false statements make it more likely that a shareholder would refrain from casting its vote for Driver's slate of candidates, on the belief that Driver's nominations for election to director were improper or invalid and voting for

those nominees would be throwing away the shareholders' one chance to participate in the management of the Corporation. In addition, the willingness of the Defendants to make false and misleading statements (or omit statements of material fact necessary to make statements not false or misleading) in express violation of Rule 14a-9 is a fact that a reasonable shareholder would have considered important in deciding how to cast its vote, insofar as it is part of the mix of information that a shareholder would want to know about the director for whom the shareholder is casting his or her vote.

Moreover, Defendants issued or caused the relevant misleading and false proxy materials to be issued intentionally for the specific purpose of deceiving shareholders into believing that Driver's nominees for election to the Board were improper. And the issuance of the proxy materials are an "essential link" to the forthcoming election of directors at the 2023 Annual Meeting, because the materially false and misleading proxy materials will likely lead to the outcome of the incumbent Board's hand-picked and preferred slate of nominees being elected to the exclusion of Driver's slate, for no reason other than a perceived risk by the shareholders that their votes for the Driver slate will not be counted or will otherwise be ineffectual, essentially removing from the shareholders the ability to make an informed, rational choice. *See, e.g.*, *Robinson v. Penn Central Co.*, 336 F. Supp. 655, (E.D. Pa. 1971) (holding proxy solicitation in connection with election of directors violated Section 14(a) and explaining such proxy materials must "provide enough factual information for the reasonable shareholder to make informed, rational choices").

Finally, the materially false and misleading proxy statements are causing Driver irreparable harm because the proxy statements are disenfranchising Driver's right as a shareholder to nominate for election and vote for directors of its choosing, in a blatant violation of Pennsylvania law. To

remedy that harm, Driver is entitled to preliminary relief postponing the 2023 Annual Meeting until its rights can be fully adjudicated and determined by this Court; and permanent equitable relief form in the form of an order compelling Defendants to issue a supplemental and corrective proxy statement and enjoining Defendants from issuing further false or misleading proxy materials regarding Driver and its nominees for director at the 2023 Annual Meeting.

For these reasons, Driver will likely be successful in its Section 14(a) claim.

**B.      Plaintiff Is Likely To Succeed On Its Claim For Declaratory And Injunctive Relief Under Pennsylvania Law.**

Additionally, Plaintiff is likely to succeed on its claim for declaratory and injunctive relief pursuant to Pennsylvania law.[1]  Specifically, Driver is likely to succeed on its claim that it is entitled to declaratory relief that it has been deprived of the right to a reasonable opportunity to nominate candidates of its choosing for election to AmeriServ's Board—which is a matter of right, not of grace, *High River Ltd. P'ship v. Mylan Labs., Inc.*, 383 F. Supp. 2d 660, 664 (M.D. Pa. 2005)—and equitable relief to remedy that wrong, *see, e.g.*, 15 Pa. C.S. §§ 104, 110; *Jewelcor Mgmt., Inc. v. Thistle Grp. Holdings, Co.*, 60 Pa. D. & C. 4th 391 (Pa. Ct. Com. Pl. 2002).

---

[1] The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  An actual case or controversy exists here between the parties.  AmeriServ management currently is engaged in inequitable manipulation of the annual shareholder election process to perpetuate the incumbency of contested directors.  Plaintiff has properly nominated three director candidates and is waging a proxy contest to replace the three incumbent directors whose seats are contested.  Management wrongfully has deprived Plaintiff of its fundamental rights to an election and to cast Plaintiff's vote and its proxies for its nominees at the election.

1.      **Defendants' Improper Rejection of Driver's Nomination Notice Was an Invalid Corporate Action under 15 Pa. C.S. § 1793.**

Under 15 Pa. C.S. § 1793(a), upon application of any person aggrieved by any corporate action, a court may "hear and determine the validity of any corporate action."  The term "corporate action" includes the "taking of any action on any matter that is required under this subpart or under any other provision of law to be, or that under the bylaws may be, submitted for action to the shareholders, directors or officers of a business corporation."  15 Pa. C.S. § 1791(a).

Driver has been aggrieved by the Director Defendants' improper and ultra vires manipulation of the nominating and election process leading up to the 2023 Annual Meeting.  As described above, and as alleged in the Complaint, Driver has nominated properly three qualified director candidates and is waging a proxy contest.  AmeriServ's incumbent Board, however, has wrongfully deprived Driver of its fundamental rights to an election and to nominate candidates of its choosing and to cast votes and proxies for those nominees at the Annual Meeting.

The corporate election process, if it is to have any validity, must be conducted with scrupulous fairness and without any advantage being conferred or denied to any candidate or slate of candidates.  In the interests of corporate democracy, those in charge of the election machinery of a corporation must be held to the highest standards in providing for and conducting corporate elections.

The Pennsylvania Business Corporation Law ("BCL") has long recognized that the nomination and election of directors is a central feature of shareholder democracy.  The right of shareholders to participate in the voting process includes the right to nominate an opposing slate.  The threat of an uninformed stockholder vote constitutes irreparable harm.  In accordance with this principle, under Section 505 of the Pennsylvania BCL of 1933, only a bylaw adopted by a corporation's shareholders could prescribe the procedure for nominating directors.  Currently, the

Pennsylvania BCL permits such procedures to be prescribed in bylaws adopted by the board of directors of a corporation.  *See* 15 Pa. C.S. § 1758(e).

In recognition of the fundamental shareholder franchise rights at issue where corporate directorial elections are concerned, however, the BCL explicitly states that such procedures— including explicitly advance notice procedures for the nomination of candidates for election— must be "fair and reasonable."  *Id.*  The purpose of this provision was to provide a higher standard for any action by the Board in this context, rather than the deference given to actions taken by a Board relating to routine business affairs of a corporation.  Indeed, the Committee Comment to Section 1758(e) confirms that the requirement of fairness and reasonableness is aimed, among other things, at ensuring that shareholders have an adequate opportunity to comply with advance notice requirements that are imposed under the bylaws, stating that:

> Advance notice bylaws are permitted if there is reasonable opportunity for shareholders to comply with them in a timely fashion and if the requirements of the bylaws are reasonable in relationship to corporate needs. Among the considerations to be taken into account in determining the reasonableness of an advance notice bylaw authorized by subsection (e) is whether the time frame within which director nominations or shareholder resolutions must be submitted is consistent with the corporation's need, if any, to (i) prepare and publish a proxy statement, (ii) verify that a director nominee meets any established qualifications for director and is willing to serve, (iii) determine that a proposed resolution is a proper subject for shareholder action, and (iv) give interested parties adequate opportunity to communicate a recommendation or response with respect to such matters or to solicit proxies.

*Id.* Committee Cmt., 2001.

Here, in declaring Driver's Nomination Notice was invalid, the Board misplaced reliance on subsection (vii) of AmeriServ's Advance Notice Bylaw (Bylaw § 1.3), which is unfair and unreasonable under Pennsylvania law.  Specifically, AmeriServ's Advance Notice Bylaw is unfair and unreasonable both (1) on its face and (2) as applied here by the Board to determined that Driver's Nomination Notice was purportedly invalid.  Specifically, Subsection (vii) purports to

29

require a shareholder to disclose in its nomination notice, to the Board, "such other information regarding each nominee proposed by the Nominating Shareholder as would have been required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission had the nominee been nominated, or intended to be nominated, by the Board of Directors." (*See* Compl. App'x 33 at 5–6.)  There is nothing fair or reasonable about requiring a stockholder to give the same information to the incumbent Board as it would include in a proxy statement to shareholders.  The Board has no right to pass judgment on who should be directors. That is a right reserved exclusively to shareholders.  *See* 15 Pa. C.S. § 1725 ("directors of a business corporation . . . shall be elected by the shareholders."); *id.* § 1726 (the "entire board of directors . . . may be removed from office without assigning any cause by the vote of shareholders").  Accordingly, for those reasons, and those discussed below, Driver is likely to succeed on its claims for declaratory and injunctive relief.

> a)      **AmeriServ's Advance Notice Bylaw is Neither Fair Nor Reasonable on its Face.**

Subsection (vii) of AmeriServ's Advance Notice Bylaw is neither fair nor reasonable on its face for three reasons.  ***First***, by adopting it, the Board members self-interestedly inserted themselves into the role of the SEC.  This is unfair and unreasonable not only because its exceeds the Board's duties under Pennsylvania law and the Board's expertise, but also because the Board, unlike the SEC, is not in a conflict-free posture to evaluate a shareholder's nomination notice in the same manner as the SEC.[2]  As proof of the Board's conflict of interest here, Driver has

---

[2] In addition, a fundamental purpose of the proxy rules is to ensure disclosure of all information that might be material to shareholders in determining how to cast their vote.  The process by which the staff of the SEC reviews proxy statements to ensure compliance with the proxy rules is iterative and participants in proxy solicitations are directed to add or modify disclosures presented in proxy materials in order to satisfy the proxy rules' disclosure requirements.  The Board, however, is using disclosure requirements (again that are applied by the staff of the SEC in an iterative process to

supplemented the disclosures in its preliminary proxy materials, including the disclosures about the Transactions, with the SEC without penalty.  The incumbent Board, by contrast, has sought to capitalize opportunistically on Driver's disclosure about the Transactions to completely exclude competing candidates at the upcoming Board election.

*Second*, Subsection (vii) of the Advance Notice Bylaw is unfair and unreasonable because the incumbent Board crafted it to apply only when a shareholder nominates a director candidate and not when the incumbent Board does so.  The SEC proxy disclosure rules, however, apply to disclosures in proxy solicitation materials about director nominees regardless of whether a shareholder conducting a proxy contest or the incumbent Board nominates them. 17 C.F.R. § 240.14a–9.  Notably, when the incumbent Board notified Driver of the incumbent Board's nominees, it disclosed nothing to Driver about those nominees except their names.

*Third*, Subsection (vii) of the Advance Notice Bylaw is unfair and unreasonable because the incumbent Board does not have a right to wield a sword to cut director nominees from the election based on the incumbents' allegation of a violation of SEC Rule 14a-9.  That Rule already provides incumbent Boards a legal remedy if it believes that a shareholder conducting proxy solicitation has made a false or misleading statement of material fact in proxy solicitation material. Such a remedy does not include disqualifying the shareholder's nominees.  The incumbent Board may file a lawsuit alleging a violation of SEC Rule 14a-9, as Driver is doing in this Complaint,

---

intended ensure that once a shareholder receives a proxy statement, that proxy statement largely complies with all applicable securities laws) to imperiously take away a fundamental right of shareholders.  As such, the Board has inequitably and unfaithfully taken a disclosure regime intended to ensure that shareholders cast fully informed votes and twisted it into a weapon to be used to prevent shareholders from the exercise of their fundamental rights.  No record exists of the SEC prohibiting a proxy solicitation due to incomplete disclosure in a preliminary proxy statement, yet the Board would, based on the same rules applied by the staff of the SEC, deprive a shareholder of a fundamental right without any opportunity to cure.

and notify the SEC, and make the Board's own public disclosure about the matter.  Here, Driver has not sought to remedy the incumbent Board's false and misleading statements giving rise to Count I above by seeking to exclude the Board's director nominees.  Instead, Driver has pursued its private right of action to enforce Rule 14a-9, as acknowledged in *Jaroslawicz*, 962 F.3d at 709.  The availability of such a right to the incumbent Board to bring such a claim for relief and publicly file a responsive statement, as it did here on March 15, 2023,[3] renders the Board's unilateral exclusion of Driver's nominees here all the more unfair and unreasonable.

   **b)**   **The Incumbent Board Has Applied the Advance Notice Bylaw Unfairly and Unreasonably.**

Additionally, even if not unfair and unreasonable on its face, the Advance Notice Bylaw violates 15 Pa. C.S. § 1758(e) in this case because of the manner in which the incumbent Board has applied it to Driver's Nomination Notice in several respects.

*First*, the incumbent Board misled Driver for two months before declaring its Nomination Notice invalid.  In contrast to Driver, AmeriServ is and has at all relevant times been a party to the Transactions, with knowledge of the details of them since long before Driver served its Nomination Notice to ASRV on January 17, 2023.  In contrast to Mr. Rudolph, who disclosed honestly the information reported to him by third parties when initially characterizing the Transactions (*i.e.*, Transactions to which he was not a party), the incumbent Board deliberately sat silent for nearly two months with knowledge of the details of the Transactions.  At no time between January 17, 2023 and January 26, 2023 did the incumbent Board disclose to Driver its independent and

---

[3] For example, in ASRV's March 15, 2023 Letter enclosed with its DEFA14A proxy soliciting material filed on the same date, ASRV noted, "The Company believes that Mr. William Rudolph has two lines of credit that exceed $4 million in the aggregate.  Driver provided materially false information in the Driver Supplemental Letter by stating that Mr. William Rudolph has only one line of credit with the Company totaling $4 million."  Appendix 24, at 4, n.4.

preexisting knowledge of the details of the Transactions or request any additional information from Driver about its Nomination Notice. Rather, the incumbent Board's communications with Driver indicated no sign that the Board was construing its Advance Notice Bylaw in such an unfair and unreasonable manner:

- On January 31, 2023, the incumbent Board communicated to Driver about the Transactions, noting that the Nomination Notice "fails to provide such disclosure for any immediate family members of the Nominees," but the incumbent Board said nothing of the details of the Transactions in its firsthand possession, which it now contends Driver should have disclosed, and the Board did express any view that the deadline for Driver to do so had already passed or its view that the purported deficiencies were uncurable. (Compl., App'x 18.)

- On February 8, 2023, upon receiving Driver's preliminary proxy statement disclosing information about the Transaction, the incumbent Board again communicated nothing to Driver about its knowledge of the details of the Transactions or any view that the disclosure was incorrect, incomplete, untimely, or uncurable. (*Id.*, App'x 20.)

- On February 10, 2023, Driver voluntarily disclosed that Mr. Rudolph's father, William C. Rudolph, has a personal line of credit with the Company in the amount of $4 million, and that Mr. Rudolph's brother-in-law, Benyamin Dere, has several commercial mortgage loans from the Company in connection with the purchase of rental units, which total, in the aggregate, approximately $8 million. The Board disclosed none of its knowledge of the Transactions at that time, nor any view that the disclosure was incorrect, incomplete, untimely, or uncurable. (*Id.*, App'x 21.)

- On March 7, 2023, in a further apparent effort to mislead Driver, the incumbent Board sent Driver a notice of ASRV's director nominees pursuant to Rule 14a-19(d). As the incumbent Board knew, that rule required ASRV to notify Driver, as a person conducting a proxy solicitation, of the names of all nominees for whom ASRV intended to solicit proxies. The incumbent Board had knowledge of the details of the Transactions long before March 7, 2023, and chose to continue to conceal it, as well as the Board's intention to rely on it as a basis for attempting to preclude the Driver Nominees for competing with the incumbent Board's nominees. (*Id.*, App'x 23.)

Only on March 15, 2023, nearly two months after submitting its Nomination Notice to Defendants, did the incumbent Board disclose its knowledge of the Transactions for the first time, in a hoped for "gotcha" moment that would curb Driver's attempts to effectuate change among the

Board's director ranks.  Specifically, the Board waited 48 days after the reported January 26, 2023 deadline to submit nominees, and 57 days after Driver's timely submitted Nomination Notice, to inform Driver of its contention that Driver's nominations are invalid.  Such gamesmanship for the sole purpose of entrenchment and disenfranchisement is anything but fair and reasonable. *Jewelcor*, 60 Pa. D. & C. 4th at 391 ("A corporation's board of directors acts improperly when it manipulates a corporate election to perpetuate its own control of the corporation.").

*Second*, the incumbent Board relied on an alleged disclosure issue regarding one of Driver's nominees, Mr. Rudolph, as a basis for attempting to invalidate all three of Driver's nominations.  But the incumbent Board of course cannot reject one or some based on any claimed failures of others.  Rather, "[t]he Board is obliged to review a nomination notice carefully and with an open mind."  *Rosenbaum v. CytoDyn Inc.*, 2021 WL 4775140, at *19 (Del. Ch. Oct. 13, 2021).  "Just because it finds disclosures inadequate with respect to one nominee, that does not mean, or justify a finding, that the entire notice is deficient."  *Id.*  There is no basis for rejecting the Nomination Notice as applied to Mr. Cooper or Ms. Simmons; the Board has not asserted any alleged deficiencies in Driver's disclosures concerning those two nominees.

*Finally*, the time frame within which director nominations or shareholder resolutions must be submitted was not consistent with the Corporation's needs.  To the contrary, the Board has sought to exclude Driver's Nomination even though Driver cured the alleged disclosure deficiencies before the incumbent Board filed its proxy statement and gave shareholders notice of the annual shareholder meeting.  The Board suffered no prejudice, let alone prejudice sufficient to exclude Driver from the nomination and solicitation process for the 2023 Annual Meeting.

       **2.**    **The Incumbent Board's Reliance on a Void and Otherwise Inapplicable Interlocks Bylaw to Disqualify Mr. Cooper is an Invalid Corporate Action under 15 Pa. C.S. § 1793.**

Driver also is likely to succeed on its claims for declaratory and injunctive relief because the incumbent Board's reliance on AmeriServ's so-called "Interlocks" Bylaw to disqualify Mr. Cooper is a similarly invalid corporate action under 15 Pa. C.S. § 1793.

Section 2.14 of ASRV's 2020 Bylaws contains the so-called Interlocks Bylaw, which provides that "[n]o person shall be eligible for election, re-election, appointment or re-appointment to the Board of Directors if such person is or within the preceding five years has been a director of any other depository institution unless such person is approved by a majority of the Board of Directors." (Compl. App'x 33 at 12.)

In the incumbent Board's March 15 Letter to Driver, it claimed that because Mr. Cooper had been nominated for election as a director of the First of Long Island Corporation, the parent company of the First National Bank of Long Island, "Mr. Cooper will be ineligible for election to the Board at the Annual Meeting pursuant to the terms of the Interlocks Provision prohibiting concurrent directorships at any other depository institution without the approval of a majority of the Board." (Compl., App'x 24 at 6.) AmeriServ publicly filed this letter with its proxy solicitation materials filed with the SEC. (*Id.* ¶ 125.)

Additionally, AmeriServ wrote in its March 15, 2023 press release (which was released simultaneously with its proxy solicitation materials) that the "[n]otice submitted by Driver contains material defects," insofar as AmeriServ viewed "the Notice's purported nomination of Mr. Cooper—who is set to become a director of New York-based First of Long Island Corporation"— as non-compliant "with AmeriServ's Interlocks Bylaw that prohibits Board members and

nominees to the Board from, among other things, concurrent directorships with other depository institutions." (*Id.*, App'x 26.)

But AmeriServ's public representations that Driver's nomination of Mr. Cooper was noncompliant with AmeriServ's Interlocks Bylaw were intentionally false and misleading statements for at least two reasons: (1) the Interlocks Bylaw is void; and (2) Mr. Cooper was not a director of First of Long Island Corporation when AmeriServ publicly declared that Mr. Cooper "will be ineligible" to serve as a director of AmeriServ.

*First*, pursuant to AmeriServ's own Bylaws, the Interlocks Bylaw is void because the Board needed advance shareholder approval to adopt the Interlocks Bylaw, and the Board did not secure such approval before the Bylaw was adopted.  On March 19, 2002, AmeriServ filed an annual Form 10-K with the SEC and attached its 2002 Bylaws as Exhibit 3.2 to that filing.  The Interlocks Bylaw is absent from the 2002 Bylaws.  (*Id.*, App'x 34.)  Notably, Section 9.2. of the 2002 Bylaws prohibits the Board members from making or altering any bylaw that establishes qualifications to become a director.  (*See id.* at 11 (prohibiting AmeriServ Board from "mak[ing] or alter[ing] any Bylaw fixing [director] qualifications"). This prohibition guards against an effort by incumbent directors to unfairly perpetuate their seats on the Board.

On August 11, 2003, AmeriServ filed a Form 10-Q with the SEC (the "2Q03 10-Q") and attached another iteration of its bylaws (the "2003 Bylaws"), which contains the Interlocks Bylaw. (*See id.*, App'x 35.)  The 2Q03 10-Q includes a record of the matters submitted to a vote of AmeriServ shareholders at its 2003 annual meeting of shareholders (the "2003 Annual Meeting"). (*See id.* Part II, Item 4.)   That record does not indicate that any vote was taken to amend the 2002 Bylaws, to include the Interlocks Bylaw or otherwise.

What is more, under Pennsylvania law, "[i]n the case of a meeting of shareholders, written notice shall be given to each shareholder that the purpose, or one of the purposes, of a meeting is to consider the adoption, amendment or repeal of the bylaws" and "[t]here shall be included in, or enclosed with, the notice a copy of the proposed amendment or a summary of the changes to be effected thereby."  15 Pa. C.S. § 1504(a) (effective in 2003 and through today).  AmeriServ's Notice of Annual Meeting and Proxy Statement for the 2003 Annual Meeting did not include any proposal to amend the 2002 Bylaws to include the Interlocks Bylaw, or otherwise, and it did not include or enclose a copy of any proposed amendment.  (*See* Compl., App'x 36.)  Driver's and its counsel's research of AmeriServ's public filings has revealed no other evidence of a submission of the Interlocks Bylaw to AmeriServ's shareholders for a vote at any point in time.

The Interlocks Bylaws plainly establishes qualifications for directors, and not just because it appears in the Bylaws immediately after an age-based qualification for directors.  (*See id.*, App'x 33, § 2.13 ("Age Limitations. No person shall be eligible for election, re-election, appointment or re-appointment to the Board of Directors if such person shall have attained the age of seventy-five (75) years at the time of any such action, unless approved by a vote of shareholders.").  Accordingly, its adoption, absent shareholder approval, renders it invalid under AmeriServ's Bylaws and an improper basis to prevent Mr. Cooper sitting for election to the Board.

***Second***, like AmeriServ's own Bylaws, Pennsylvania law required the Board to obtain shareholder approval before adopting the Interlock Bylaw.  Under 15 Pa. C.S. § 1504(a), subject to exceptions not applicable here, "the shareholders entitled to vote shall have the power to adopt, amend and repeal the bylaws of a business corporation."  That power vested in the shareholders includes the power to prescribe bylaws concerning the qualifications of directors.  15 Pa. C.S. § 1722 ("Except as otherwise provided in this section [requiring directors to be natural persons of

full age], the qualifications of directors may be prescribed in the bylaws.").  Although in limited circumstances, "the authority to adopt, amend and repeal bylaws may be expressly vested by the bylaws in the board of directors, subject to the power of the shareholders to change such action," here, AmeriServ's Bylaws expressly *do not* vest the board with authority to adopt, amend, or repeal bylaws fixing any of the qualifications of directors.  To the contrary, they expressly prohibit the Board from doing so.

Moreover, under Section 1504(a), the subject of fixing director qualifications is not one as to which the bylaws *could* vest the board with authority to adopt, amend, or repeal bylaws.  *Id.* § 1504(b).  Under Section 1504(b), "the board of directors shall not have the authority to adopt or change a bylaw on any subject that is committed expressly to the shareholders by any of the provisions of this subpart." *Id.*  Selection and removal of the board of directors are subjects committed expressly to the shareholders under Pennsylvania law.  15 Pa. C.S. § 1725 ("directors of a business corporation . . . shall be elected by the shareholders"); *id.* § 1726 ("Unless otherwise provided in a bylaw adopted by the shareholders, the entire board of directors. . . may be removed from office without assigning any cause by the vote of shareholders.").  The right to fix qualifications of directors is an integral component of the rights to select and remove directors. And Pennsylvania law stands behind AmeriServ's Bylaws, which prohibited adoption of the Interlocks Bylaw without express shareholder approval.

Accordingly, Driver is likely to succeed on its claims for declaratory relief.

### C.    Plaintiff Is Likely To Succeed On Its Breach Of Fiduciary Duties Claim.

Finally, Driver is likely to succeed on its breach of fiduciary duty claim.  The Director Defendants owe and continue to owe AmeriServ's shareholders—including Driver—the highest duties of loyalty, care, and good faith.  15 Pa. C.S. § 512.  Each director's fiduciary duties require the director to refrain from taking steps to improperly interfere with the stockholder franchise for

the purpose of entrenchment, including the right to nominate directors for election. *Jewelcor*, 60 Pa. D. & C. 4th at 391.

Driver, like all other AmeriServ shareholders, is permitted to nominate directors for election by complying with the Company's Advance Notice Bylaw. Driver did that. To the extent the Board believed otherwise, that is a consequence of either the Bylaws and the procedures with which Driver had to comply (assuming they were valid and lawful, which they were not) containing vague and ambiguous language that the Board inequitably construed in a manner that disenfranchised Driver's nomination rights as a shareholder.

What is more, to the extent that the Board reasonably believed that the Nomination Notice failed to comply with AmeriServ's Advance Notice Bylaw, the Board failed to act reasonably when it permitted Driver to respond to the alleged deficiencies in its Notice and committed to Driver to "remain open to engagement," "including engagement related to its submission of nominations for the Annual Meeting." (Compl., App'x 18.)

By imposing contrived obligations of disclosure on Driver that are not required by the Company's Bylaws (and that the Board has not applied to its own nominees), misconstruing the Bylaw requirements, and failing to allow Driver to correct any alleged deficiencies (despite having committed to continued engagement with Driver on Driver's nominees and nomination process), the Board has applied the Company's advance notice bylaw in bad faith in an effort to disenfranchise Driver, doom its nominees, and entrench themselves in office.

Each director's fiduciary duty requires the director to fairly and evenhandedly enforce the Company's advance notice bylaws and to refrain from taking steps to improperly interfere with the stockholder franchise and right to nominate directors for election. But the Board has rejected Driver's Nomination Notice in bad faith and in breach of the Board's fiduciary duty of loyalty.

The Board is abusing the corporate machinery in an illegitimate attempt to prevent a stockholder nomination of a director and prevent the Company's stockholders from having a choice in the election of directors.  The Board has no legitimate basis to reject Driver's Nomination Notice and is doing so in violation of their fiduciary duties in order to protect their seats from an insurgent director nomination.

Accordingly, Driver is likely to be successful on its breach of fiduciary duty claim, too.

## II.    PLAINTIFF SATISFIES THE REMAINING THREE PREREQUESTIES FOR INJUNCTIVE RELIEF

### A.    Plaintiffs Will Suffer Irreparable Injury Without Postponement Of The Annual Meeting To Elect Directors.

Absent injunctive relief postponing the 2023 Annual Meeting until the Parties' rights can be determined by this Court, Driver will be denied its fundamental right to vote to elect new directors of its choosing.  *See Jewelcor*, 60 Pa. D & C. 4th at 408–09; *Wurtzel v. Park Towne Place Apartments Ltd. P'ship*, 62 Pa. D. & C. 4th 330, 345 (Pa. Ct. Com. Pl. 2001) ("[T]hwarting shareholders' voting rights to choose a board of directors constituted irreparable harm.").  The time to act is now, because the incumbent Board could set the 2023 Annual Meeting date at any point in time, which would further hinder Driver's efforts to remedy Defendants' wrongdoing before it loses the opportunity to nominate and vote for directors of its choosing at the 2023 Annual Meeting.

Indeed, a failure to postpone the 2023 Annual Meeting will irreparably harm Driver because it has the potential, if the incumbent Board's plans are realized, to change the electoral landscape permanently and prohibit Driver from nominating and voting for directors of its choosing, as is its right as a shareholder.  This possibility is not mere speculation.  To the contrary, AmeriServ has filed recently a related action in the Pennsylvania Court of Common Pleas for Cambria County, which seeks to permanently enjoin Driver from nominating any candidates for

election at the 2023 Annual Meeting.  *AmeriServ Financial Inc. v. Driver Opportunity Partners I, L.P., et al.*, No. 2023-1002 (Pa. Ct. Com. Pl. Mar. 17, 2023).  Accordingly, without preliminary action to preserve the status quo from this Court, Driver will lose key rights it holds as a shareholder indefinitely.

**B.      The Balance Of Hardships Weighs In Plaintiff's Favor.**

Thwarting the rights and the will of Driver and the other AmeriServ shareholders by definition is hardship to them and will lead to hardship in this case.  *Aprahamian*, 531 A.2d at 1209; *Jewelcor*, 60 Pa. D. & C. 4th at 408–11.  In contrast, AmeriServ will not suffer any hardship if the 2023 Annual Meeting is postponed pending the determination of the Parties' rights in this action.  Apart from the personal interests of the incumbent Board to entrench themselves and their culture of mismanagement, there is no cognizable harm to the Corporation itself that could result from the preservation of the status quo.  The incumbent directors whose seats are contested "have no vested right to continue to serve as directors and therefore will suffer no harm if they are defeated" once this litigation is allowed to run its course.  *Aprahamian*, 531 A.2d at 1209; *Jewelcor*, 60 Pa. D. & C. 4th at 408–11.  By contrast, permitting AmeriServ's incumbent Board to rush the 2023 Annual Meeting risks obliterating Driver's right to nominate and advocate for its slate of directors entirely.

**C.      The Public Interest Favors Granting Preliminary Relief.**

"There is little doubt that the right to vote for a corporation's directors is one of the paramount privileged afforded shareholders."  *Jewelcor*, 60 Pa. D. & C. 4th at 400.  The public interest favors protecting this paramount privilege, especially to prevent sitting directors from further entrenching themselves at the expense of shareholder's rights.

## CONCLUSION

AmeriServ's incumbent Board has been working actively to unlawfully and inequitably interfere with Driver's fundamental rights to nominate and vote for directors of its choosing. Defendants should be restrained from further directly or indirectly interfering with those rights, particularly before this litigation has run its course.  For that reason, Driver respectfully request that this Court issue a preliminary injunction prohibiting AmeriServ from holding the 2023 Annual Meeting until after the Parties' rights are determined in this litigation, including but not limited to the Parties' rights as defined by Driver's affirmative claims for relief.


Date:  March 30, 2023

_/s/Jonathan S. Krause_
Jonathan S. Krause, Esq.
Thomas V. Ayala, Esq.
(*pro hac vice* forthcoming)
Ryan M. Moore, Esq.
(*pro hac vice* forthcoming)
KLEHR HARRISON
HARVEY BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA  19103
phone (215) 569-2700
fax (215) 568-6603
jkrause@klehr.com
tayala@klehr.com
rmoore@klehr.com

*Counsel for Plaintiff,*
*Driver Opportunity Partners I, LP*