**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DRIVER OPPORTUNITY PARTNERS I, LP, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>J. MICHAEL ADAMS, *et al.*, )<br>)<br>Defendants. ) | Civil Action No. 3:23-56<br>Judge Stephanie L. Haines |

## OPINION

This action arises out of the attempt by Plaintiff Driver Opportunity Partners I, LP ("Driver") to nominate three candidates to the Board of Directors of Defendant Ameriserv Financial, Inc. ("Ameriserv")[1] for an upcoming director election at Ameriserv's 2023 Annual Meeting, which is currently scheduled for May 26, 2023. Ameriserv rejected Driver's Nomination Notice for failure to comply with the advance notice provisions of Ameriserv's Amended and Restated Bylaws ("Advanced Notice Bylaw") and determined that Driver does not have the right to nominate its candidates for the 2023 Annual Meeting. Pending before the Court is Driver's Motion for Preliminary Injunction (ECF No. 4) wherein Driver requests that the Court enjoin Ameriserv from holding its 2023 Annual Meeting until after a decision on the merits of its claims in this action. On April 14, 2023, Defendants filed a Memorandum of Law in Opposition to Driver's Motion for Preliminary Injunction (ECF No. 22), and on April 21, 2023, Driver filed a Reply in Support of its Motion for Preliminary Injunction (ECF No. 31). On April 24, 2023,

---

[1] Defendants J. Michael Adams, Jr., Amy Bradley, Allan R. Dennison, Kim W. Kunkle, Margaret A. O'Malley, Daniel A. Onorato, Mark E. Pasquerilla, Sara A. Sargent, and Jeffrey A. Stopko are named as Defendants because they are current directors on the Ameriserv Board, and accordingly, are referred to by the parties as the "Director Defendants".

Defendants filed a Supplemental Submission (ECF No. 32).  The Court conducted a preliminary injunction hearing on May 9 and 10, 2023 (ECF Nos. 51 and 52).  The parties then filed post-hearing briefs (ECF Nos. 54 and 55) on May 12, 2023, and this matter is now ripe for disposition.

Upon consideration of the testimony and evidence of record, the Court finds Driver has failed to meet its burden to demonstrate it is likely to prevail on the merits of its claims or that it will suffer immediate, irreparable harm if the Court does not issue a preliminary injunction. Accordingly, the Court will DENY Driver's Motion for Preliminary Injunction (ECF No. 4) for the following reasons which constitute the Court's findings of fact and conclusions of law.

## I.     Factual and Procedural Background[2]

AmeriServ is incorporated under the laws of Pennsylvania, and its common stock is publicly traded on the NASDAQ exchange under the ticker "ASRV." *Id.* at ¶3.  According to its public filings, between August 19, 2022 and January 10, 2023, Driver purchased 201,000 shares of common stock in Ameriserv, and Driver affiliates own another 1,276,919 shares of Ameriserv common stock, for a total ownership of 1,477,919 shares, representing 8.6% of the Ameriserv's outstanding common stock.  *Id.* at ¶2.  Driver's general partner is Driver Management Co., LLC, the managing member of which is J. Abbott R. Cooper ("Cooper").  *Id.* at ¶14.

### A.  Ameriserv's Bylaws

Ameriserv's Advance Notice Bylaw is found at Section 1.3 of its bylaws, and it sets forth the advance notice requirements that Ameriserv requires of all candidates for its board of directors nominated by a shareholder.  To nominate a director candidate, the nominating shareholder must

---

[2] There are few disputed facts in this case. Unless otherwise noted, the facts included in this section are taken from the Joint Stipulation (ECF No. 34) that the parties filed in advance of the preliminary injunction hearing. Additionally, the reference to "JX" is used by the parties and the Court to refer to the Joint Exhibits admitted at the preliminary injunction hearing, which are filed of record at ECF Nos. 56 and 57.

provide "timely written notice" to the Non-Executive Chairperson of the Company Board in accordance with the requirements in Section 1.3(b) of the Advance Notice Bylaw (ECF No. 22-3 at pp. 9-10).   The Advance Notice Bylaw identifies nine categories of information that any shareholder seeking to nominate a director candidate must provide as to each candidate, including:

> such other information regarding each nominee proposed by the Nominating Shareholder as would have been required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission had the nominee been nominated, or intended to be nominated, by the Board of Directors.

> *Id.* at Article 1, § 1.3(b)(vii)(hereafter, "proxy information").

To be timely, "in the case of an annual meeting that is called for a date that is within 30 days before or after the anniversary date of the immediately preceding annual meeting of shareholders," the written notice must be provided "not less than 90 days nor more than 120 days prior to such anniversary date[.]" *Id.* In 2022, Ameriserv held its annual shareholder meeting on April 26, 2022 (ECF No. 22 at p. 5).   Accordingly, the nomination window within which shareholders were required to submit nomination notices in accordance with the Advance Notice Bylaw ran from December 27, 2022 to January 26, 2023.   *Id.*   Under the Advanced Notice Bylaw, if the annual meeting is not held within 30 days of the anniversary of the prior year's meeting, then the shareholder nomination period resets (ECF No. 22-3 at pp. 9-10, § 1.3(a)).   The Advance Notice Bylaw was adopted in its current form in 2013 (ECF No. 34 at ¶72).

Also of relevance to this matter, Ameriserv's Bylaws contain what the parties refer to as an "Interlocks Bylaw" at Section 2.14.   *Id.* at ¶73.   The Interlocks Bylaw provides that: "[n]o person shall be eligible for election, re-election, appointment or re-appointment to the Board … if such person is or within the preceding five years has been a director of any other depository institution unless such person is approved by a majority of the Board…" (ECF No. 22-3 at pp. 9-

10, Article 2, § 2.14).  There is no dispute that the Interlocks Bylaw was adopted in 2003 by a vote of Ameriserv's Board and not by a vote of shareholders (ECF No. 34 at ¶73).

**B. Driver's Nomination Notice and Ameriserv's Deficiency Letter**

As previously stated, in December 2022, Driver informed Ameriserv that it wished to nominate three individuals as director candidates for Ameriserv's Board of Directors at the upcoming 2023 Annual Meeting.  On January 9, 2023, AmeriServ asked Driver to have its proposed nominees complete a nominee questionnaire and make themselves available for an interview (ECF No. 22-3 at p. 4).  However, Driver declined to participate in this voluntary process.

Instead, on January 17, 2023, Driver delivered its Nomination Notice to Defendant Dennison, the Chair of the Board of Ameriserv (ECF No. 34 at ¶¶6, 26).  In the Nomination Notice (ECF No. 22-3 at pp. 25-40), Driver indicated it intended to nominate Cooper, Julius D. Rudolph ("Rudolph"), and Brandon L. Simmons ("Simmons") as nominees to be elected to the Board as directors at the 2023 Annual Meeting (ECF No. 34 at ¶26).  Cooper testified that Driver hired outside counsel to collect the information Driver needed to provide in its Nomination Notice (ECF No. 51 at pp. 15:11-16:13, 103:5-8, 103:17-104:1).  Driver submitted the Nomination Notice on January 17, 2023, and the parties do not dispute January 26, 2023 was the applicable deadline.

On January 31, 2023, AmeriServ responded to Driver's Nomination Notice (the "Deficiency Letter") (ECF No. 22-3 at pp. 42-44).  In the Deficiency Letter, Ameriserv identified four deficiencies with the Nomination Notice related to the proxy information required under Schedule 14A.  *See* 17 C.F.R. § 240.14a-101.  Ameriserv first identified that Item 5(b)(1)(ii) of Schedule 14A requires the disclosure of each nominee's "present principal occupation or employment and the name, principal business and address of any corporation or other organization in which such employment is carried on…".  *Id.* at § 240.14a-101.  As to Rudolph, the Nomination

4

Notice failed to confirm that Rudolph's listed address was his principal place of business, and as to Simmons, the Nomination Notice failed to provide addresses for his listed employment or confirm whether those addresses were the same as the address provided on the notice for Simmons.

As the second deficiency, Ameriserv stated that Item 5(b)(1)(vi) of Schedule 14A requires the Nomination Notice to "[s]tate with respect to all securities of the registrant purchased or sold within the past two years, the dates on which they were purchased or sold and the amount purchased or sold on each such date." *Id.* at § 240.14a-101, Item 5(b)(1)(vi). Driver's Nomination Notice states that "none of the Nominees have entered into any transactions in the securities of the Company during the past two years" (ECF No. 22-3 at p. 31). However, Exhibit A of the Nomination Notice disclosed numerous transactions by Rudolph, but the Nomination Notice did not address this inconsistency. The Nomination Notice also failed to state whether McKnight Realty Partners, of which Rudolph currently serves as CEO, or any of its principals or affiliates has purchased or sold any securities of Ameriserv during the past two years.

As to the third deficiency, Ameriserv stated that Item 7(b) of Schedule 14A requires the disclosure of the information required by Item 404(a) of the U.S. Securities and Exchange Commission ("SEC") Regulation S-K. *Id.* at § 240.14a-101, Item 7(b). Item 404(a) requires the disclosure of "any transaction, since the beginning of the registrant's last fiscal year, or any currently proposed transaction, in which the registrant was or is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest." 17 C.F.R. § 229.404. The applicable definition of "related persons" includes "any immediate family member...of any nominee for director..." *Id.*, Instructions 1(a)(iii). Ameriserv identified in its Deficiency Letter that the Nomination Notice completely ignored the requirement to disclose related party transactions (the "related party transactions") as to all nominees, noting the Nomination Notice stated only that "no Participant or any of his, her or its

5

'associates' was a party to any transaction, or series of similar transaction…to which the Company or any of its subsidiaries was or is to be a party…[exceeding] $120,000" (ECF No. 22-3 at p. 43). The term "associates" is a defined term that includes only "any relative of such spouse who has the same home as such person." 17 C.F.R. § 240.14c-1(a)(3).

Lastly, as to the fourth deficiency, Ameriserv stated that "Item 8 of Schedule 14A requires with respect to the Nominees and their associates, the disclosure of the information required by Item 402 of Regulation S-K (Executive Compensation)." Driver's Nomination Notice failed to provide this required disclosure. 17 C.F.R. § 240.14a-101, Item 8.

As to the deficiencies in the Nomination Notice, Ameriserv indicated it would "appreciate [Driver's] prompt attention to [those] issues" (ECF No. 22-3 at. p. 44). The Deficiency Letter cautioned however that the letter should not be interpreted to be confirmation or validation of the sufficiency, timeliness or adequacy of the Nomination Notice in any respect (ECF No. 22-3 at p. 44) (*see also* ECF No. 51 at p. 127:7-22). There is no dispute that Ameriserv's bylaws do not require it to inform Driver of any deficiencies in its Nomination Notice and do not provide a "cure" period or process to correct any deficiencies after the expiration of the nomination window deadline (ECF No. 51 at pp. 129:11-16; 97:25-98:1-4).

## C. Related Party Transaction Disclosures and Ameriserv's Rejection of Driver's Nomination Notice

On February 10, 2023, Driver responded to AmeriServ's January 31, 2023 letter regarding the Nomination Notice (ECF No. 22-3 at pp. 46-49). In that letter, Driver disclosed that Rudolph's father had a $4 million line of credit with Ameriserv and his brother-in-law, identified incorrectly as "Benyamin Dere," had "several commercial mortgage loans from the Company in connection with the purchase of rental units, which total, in the aggregate, approximately $8 million." *Id.* at p. 48. At the preliminary injunction hearing, Rudolph testified he provided the related party

transaction information to Driver's attorneys during the preparation of the Nomination Notice (ECF No. 52, at pp. 33-34). In addition to providing this disclosure to Ameriserv, Driver also provided Rudolph's related party transaction information to the SEC as part of its preliminary proxy statement on February 8, 2023 (ECF No. 34 at ¶39).

On March 7, 2023, AmeriServ wrote to Driver to inform it of its intent to nominate Richard W. Bloomingdale, David J. Hickton, and Daniel A. Onorato for election to the Company's Board at the 2023 Annual Meeting. *Id.* at ¶43. On March 15, 2023, AmeriServ wrote to Driver to reject its Nomination Notice (the "Rejection") (ECF No. 34 at ¶44, ECF No. 22-3 at pp. 51-61, JX-24). Ameriserv stated it rejected the Nomination Notice because it failed to satisfy the requirements of the Advance Notice Bylaw and that Driver's failure to timely comply with the Advance Notice Bylaw prevented Driver from seeking to elect its proposed nominees to the Board at the 2023 Annual Meeting. The Rejection also stated that Ameriserv looked into Rudolph's related party transaction disclosure and determined that the information Driver provided on February 10, 2023 was inaccurate in terms of (1) the number of lines of credit at issue, (2) the amount of the loans at issue, and (3) the first and last names of Rudolph's brother-in-law (ECF No. 52 at p. 52:1-20). Ameriserv's Rejection also explained Cooper would be ineligible to join the Board under the Interlocks Bylaw because Cooper was set to be elected as a director to the board of the First of Long Island Corporation, a depository institution, on April 18, 2023. AmeriServ also then publicly filed its proxy soliciting material with the SEC (ECF No. 34 at ¶45, JX-25).

At the preliminary injunction hearing, Jeffrey Stopko, Ameriserv's President and CEO, and Allan Dennison, Chairman of Ameriserv's Board, both testified regarding the decision to reject the Nomination Notice, which was memorialized in meeting minutes from a March 14, 2023 Special Board Meeting (ECF No. 56-3 at pp. 294-297). The meeting minutes state that "[i]t appears that Ameriserv has an opportunity to reject Driver's notice of director nominations as a

result of non-compliance with the bylaw requirement to disclose certain required information."

*Id.* at p. 294.  As to the meeting minutes, Dennison testified as follows:

> Q. Now, you described the prospect of rejecting Driver's nomination notice as an opportunity for the board. Why did you use the word opportunity?
>
> A. Because clearly it was an opportunity to take an action in dealing with an activist shareholder.
>
> Q. And you viewed the ability to exclude any possibility that Driver could nominate candidates as a good thing for the board, correct?
>
> A. We viewed the current list of candidates that he was proposing were not appropriate for the board, and that's why we were able to reject the nomination.

ECF No. 52 at p. 85:1–19.

On March 16, 2023, Driver responded to the Rejection by refusing to withdraw its nominee slate and threatening litigation against Ameriserv and its Directors if they refused to reverse the decision to reject the Nomination Notice (ECF No. 22-3 at pp. 63-65).   On March 17, 2023, AmeriServ filed a Complaint for Declaratory Judgment in the Court of Common Pleas of Cambria County, Pennsylvania against Driver, Cooper, Rudolph, and Simmons (ECF No. 34 at ¶48, JX-27a).  On March 22, 2023, Driver provided a further disclosure in response to the Rejection and disclosed that Rudolph's father "has two personal lines of credit with the Company which total $5 million" but continued to misidentify Rudolph's brother-in-law as "Benyamin Dere" (ECF No. 22-3 at pp. 67-74).

On March 29, 2023, Driver filed this lawsuit requesting that the Court (1) declare its Nomination Notice is valid; (2) enjoin the Ameriserv from rejecting Driver's Nomination Notice; (3) require the Ameriserv to "correct" its public filings with the SEC; (4) enjoin the Ameriserv's 2023 Annual Shareholder meeting from going forward; and (5) declare that the Director Defendants breached their fiduciary duties to Driver.

## II.   Standard of Review

"[T]he grant of injunctive relief is an 'extraordinary remedy which should be granted only in limited circumstances.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). To prevail, the plaintiffs must demonstrate that: (1) they are likely to succeed on the merits of their claims, (2) they are likely to suffer irreparable harm without relief, (3) the balance of harms favors them, and (4) relief is in the public interest. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). "All four factors should favor relief before an injunction will issue." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992) (citation omitted). However, before reaching factors three (3) and four (4), the moving party must first satisfy its burden with respect to factors one (1) and two (2). If a plaintiff fails to satisfy this burden, this is the end of the inquiry, and a preliminary injunction will not issue. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017).

## III.   Analysis

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as federal courts have exclusive jurisdiction over Driver's Section 14(a) claim at Count I pursuant to the Securities Exchange Act of 1934, 15 U.S.C. §78n(a), and SEC Rule 14a-9, 17 C.F.R. §240.14a-9. *See* 15 U.S.C. §78aa. Diversity jurisdiction also exists under 28 U.S.C. §1332(a). However, as a preliminary issue, Ameriserv argues the Court should abstain from adjudicating Driver's claims and dismiss this case because the legal issues in this case involve novel questions of state law as to the interpretation of Pennsylvania's Business Corporation Law and these questions should be heard in state court. Alternatively, Ameriserv contends that if the Court decides that it should retain jurisdiction over Driver's Section 14(a) claim at Count I, that claim should be stayed pending resolution of litigation that was first filed in the Court of Common Pleas of Cambria County, but

has since been removed to this Court and is filed at 3:23-cv-67, *Ameriserv Financial, Inc. v. Driver Opportunity Partners I, L.P. et al.*

As previously mentioned, Ameriserv initiated the parallel state court litigation to obtain a declaratory judgment finding that Driver's candidates could not stand for election because of Driver's failure to comply with the Advance Notice Bylaw. Ameriserv filed that action in state court as both Ameriserv and Rudolph are Pennsylvania citizens. Driver's removal alleges Rudolph was fraudulently joined as a party to that action. Prior to that, on December 9, 2022, Driver initiated a lawsuit against Ameriserv in this Court relating to a corporate books and records inspection request, which is filed at *Driver Opportunity Partners I, LP v. Ameriserv Financial, Inc.*, 3:22-cv-237.[3]

Thus, at this time, there are currently three different cases between these parties before the Court which essentially turn on the same set of documents and events, and in each of these cases, the parties have filed dispositive motions, including Ameriserv's motion to remand the parallel state court litigation filed at 3:23-cv-67. Given the immediacy of the injunctive relief requested in this case, the Court first rules on the preliminary injunction motion and in due course will address the remand motion pending in the case filed at 3:23-cv-67. Following that ruling, the Court will revisit the issue of abstention in this case.

As to Driver's request for injunctive relief, Driver contends that enjoining Ameriserv from holding its meeting would maintain the status quo. Ameriserv contends that the Annual Meeting has gone forward in the spring of each year for at least the past 30 years, and further, that Driver clearly anticipated an annual meeting to be scheduled within 30 days before or after the 2022

---

[3] Though allegations concerning the corporate books and records inspection request litigation filed at 3:22-cv-237 have spilled into this case, the Court need not address the allegations in that case to rule on the pending request for a preliminary injunction.

annual meeting, which was held on April 26, 2022, based on its calculation of the nomination notice window. The Court agrees with Ameriserv and finds that, in seeking to enjoin the May 26, 2023 Annual Meeting, Driver seeks to alter the status quo.

For the reasons set forth below, the Court finds Driver has not demonstrated it is likely to succeed on the merits of its claims or that it will suffer immediate and irreparable harm, and accordingly, the Court will deny Driver's request for a preliminary injunction.

### A. Driver is not likely to succeed on the merits of its claims.

A showing of the likelihood of success on the merits is a "gateway factor," which the plaintiff must establish with the required specificity. *Reilly*, 858 F.3d at 179. As previously stated, at Count I, Driver's Complaint asserts a claim under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78n(a), and SEC Rule 14a-9, 17 C.F.R. §240.14a-9. Driver seeks declaratory and injunctive relief in its favor at Count II. Lastly, Driver asserts a claim against the Director Defendants for breach of fiduciary duty at Count III. Ultimately, Driver has not shown that its chance of success is "significantly better than negligible," *Reilly*, 858 F.3d at 179, as to any of its claims.

### 1. Driver is not likely to succeed on its claim for declaratory and injunctive relief at Count II.

Though Driver's Section 14(a) claim is asserted as Count I of the Complaint in this case, resolution of that claim turns on the Court's determination of the issues raised in Count II. Therefore, the Court will first address Driver's likelihood to succeed on its claim at Count II for declaratory and injunctive relief against Ameriserv before addressing the derivative Section 14(a) claim at Count I.

At Count II, Driver seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. 2201, that Ameriserv's rejection of the Nomination Notice is an invalid corporate action.

Pennsylvania's Business Corporation Law ("BCL") allows the court to review corporate actions and to invalidate or enjoin enforcement of bylaws that are patently unreasonable or conflict with specific statutory requirements. *See id.* 15 Pa. C. S. §§ 104, 1793.  Relevant to this case, "[t]he BCL allows corporations to enforce advance notice provisions only if they are 'fair and reasonable' in light of corporate needs." *High River Ltd. P'ship v. Mylan Labs., Inc.*, 383 F. Supp. 2d 660, 665 (M.D. Pa. 2005) (quoting 15 Pa. C. S. § 1758(e)).  If a company's "bylaws provide a fair and reasonable procedure for the nomination of candidates for election as directors, only candidates who have been duly nominated in accordance therewith shall be eligible for election." 15 Pa. C.S. § 1758(e); *see also High River*, 383 F. Supp. 2d at 663 ("[s]hareholders are allowed to nominate candidates for election to the board, but the corporation is obligated to accept only those nominations submitted in accordance with advance notice requirements of the corporate bylaws…").

Here, Driver argues it is likely to succeed on its claim at Count II because Ameriserv's Advance Notice Bylaw is unfair and unreasonable on its face and as applied by Ameriserv's Board of Directors.  As set forth below, the Court disagrees and finds the Advance Notice Bylaw is fair and reasonable both on its face and as applied.

### a.  The Advance Notice Bylaw is Fair and Reasonable.

Pursuant to Article 1, Section 1.3(b) of the Advance Notice Bylaw, only such persons who are nominated pursuant to the procedures set forth in the bylaws are eligible to stand for election to the Company's board of directors.  There is no dispute that the Advance Notice Bylaw was adopted in its current form in 2013—almost 9 years before Driver acquired its interest in Ameriserv. *See Rosenbaum v. CytoDyn Inc.*, No. 2021-0728-JRS, 2021 Del. Ch. LEXIS 241, at

*4 (Ch. Oct. 13, 2021) ("No one disputes that the bylaw was adopted on the proverbial 'clear day.'").[4]

Driver contends that it is not fair or reasonable for Ameriserv to require that a shareholder give the same information to the incumbent Board as the Board would include in a proxy statement to the shareholders because: 1) Ameriserv is then inserting itself into the role of the SEC; 2) it only applies to candidate's nominated by a shareholder, not those nominated by the Board; and 3) the Board cannot use this section to disqualify shareholder nominees.  Driver also complains it is unfair to require it to make the related party transaction disclosures, describing the SEC proxy disclosure requirements as a "legislative labyrinth" (ECF No. 53 at p. 8).

Driver's arguments are unavailing. Advance notice bylaws routinely require a nomination notice to include the SEC proxy statement information. *See, e.g., Blackrock Credit Allocation Income Tr. v. Saba Capital Master Fund, Ltd.*, 224 A.3d 964, 968, 980-81 (Del. 2020) (upholding an advance notice bylaw that required shareholder nomination notices to "…contain information…'that would be required to be disclosed in a proxy statement or other filing required to be made in connection with solicitations of proxies for each election of directors in an election contest pursuant to Section 14 of the [Securities Exchange Act of 1934]'"); *Rosenbaum*, at *4 ("[T]he Advanced Notice Bylaw [at issue] incorporates the disclosure requirements in Regulations 14A of the Securities Exchange Act of 1934.").

Specifically, in *BlackRock*, the Delaware Supreme Court held that a shareholder's board nominees were ineligible to stand for election because the shareholder had failed to comply with

---

[4] Though Driver correctly points out that Delaware does not have a statute requiring advance notice bylaws to be "fair and reasonable" as does Pennsylvania's BCL, Delaware case law appears to evaluate advance notice bylaws under similar standards. *See Strategic Inv. Opportunities LLC v. Lee Enters.*, No. 2021-1089-LWW, 2022 Del. Ch. LEXIS 34, at *22 (Ch. Feb. 14, 2022) ("[t]he court must determine whether the advance notice bylaw has afforded the shareholders a fair opportunity to nominate director candidates") (internal citation omitted).

the advance notice bylaw at issue, in part, by failing to provide complete information that "would be required to be disclosed in a proxy statement." *BlackRock*, 224 A.3d at 968, 981.  In this case, Cooper agreed that the required disclosure of proxy statement information is "not an uncommon obligation found in financial institution bylaws" and is "pretty customary" (ECF No. 51 at pp. 99:12-100:22, 101:8).  Further, Cooper testified Driver obtained outside counsel based in New York, from the firm Olshan Frome Wolosky, LLP, and that these attorneys were specialized in this field ("This is what they do.") (ECF No. 51 at p. 15: 11-13).  Accordingly, the Court finds Driver has failed to provide evidence to support its contention that the Advance Notice Bylaw is unfair or unreasonable on its face.  *See Rosenbaum v. CytoDyn Inc.*, No. 2021-0728-JRS, 2021 Del. Ch. LEXIS 241 (Ch. Oct. 13, 2021) (entering judgment in favor of defendants because defendants' advance notice bylaw had been in place for years before plaintiffs submitted their nomination notice, and plaintiffs were well aware of, and understood, the advance notice bylaw, as the evidence revealed "plaintiffs had parsed it carefully before submitting their Nomination Notice").

**b. The Advance Notice Bylaw is fair as applied.**

Driver contends that the Advance Notice Bylaw is unfair as applied by the Board because the Board waited until after the Nomination Notice Deadline to advise of the deficiencies in the Nomination Notice, and even though Driver provided additional disclosures, Ameriserv still rejected the Nomination Notice.  The Court notes Driver did not wait until the eve of the deadline to submit its Nomination Notice, but rather submitted it almost 9 days before the deadline. However, Ameriserv did not advise Driver of the deficiencies in the Nomination Notice until January 31, 2023, after the deadline passed.  Additionally, regarding the deficiencies, Ameriserv indicated it would "appreciate [Driver's] prompt attention to [those] issues" (ECF No. 22-3 at. p.

44). It is plausible that Driver may have believed its Nomination Notice would be eventually accepted if it corrected the deficiencies.

As to the enforcement of an advance notice bylaw, in *Strategic Inv. Opportunities LLC v. Lee Enters.* the Delaware Chancery Court noted that:

> "[t]he court's analysis does not necessarily end if a stockholder fails to comply with the plain terms of an advance notice bylaw. If circumstances require, the court will go on to consider whether the fiduciaries' actions were unreasonable or inequitable. Equity will prohibit, for example, attempts to 'utilize the corporate machinery' for the 'purpose of obstructing the legitimate efforts of dissident stockholders in the exercise of their right to undertake a proxy contest against management.'"

*Id.* at *22 (quoting *Schnell v. Chris-Craft Indus., Inc.*, 285 A.2d 437, 439 (Del.1971)).

The *Strategic* Court specifically evaluated the issue of "as applied" Board conduct as follows:

> "There is also 'no evidence of any manipulative conduct' by the Board suggesting that its enforcement of the Bylaws was not made even handedly and in good faith. The Board did not, for example, 'significant[ly] change [the] corporate direction or policy' after the notice deadline had expired as in *Hubbard v. Hollywood Park Realty Enters., Inc.*, Civil Action No. 11779, 1991 Del. Ch. LEXIS 9 (Ch. Jan. 14, 1991); set meeting dates that made it impossible for a stockholder to give timely notice of a nomination as in *Lerman v. Diagnostic Data, Inc.*, 421 A.2d 906 (Del. Ch. 1980); amend the date of the stockholder meeting to 'obtain an inequitable advantage' as in *Schnell v. Chris-Craft Indus., Inc.*, 285 A.2d 437 (Del.1971); or fail to announce an interpretation of a bylaw that effectively thwarted a stockholders' ability to present a stockholder proposal until the nomination deadline had passed as in *Mesa Petroleum Co. v. Unocal Corp.*, C.A. 7997, 1985 Del. Ch. LEXIS 461, at *1 (Ch. Apr. 22, 1985)."

*Id.* at *36.

Here, Driver claims that Ameriserv used the Advance Notice Bylaw as a pretext to deny shareholders their right to nominate and elect directors of their choosing (ECF No. 53 at p. 16). However, there is no evidence that Ameriserv engaged in any manipulation or took any actions to prevent Driver from complying with the Advance Notice Bylaw. Relying on the March 14, 2023 meeting minutes, Driver contends the Board was searching for any "opportunity" they could find

to reject Driver's Nomination Notice, but the fact that the Board was aware it had the "opportunity" to reject the Nomination Notice has no effect on Driver's failure to comply with the requirements of the Advance Notice Bylaw in its Nomination Notice. *See Strategic* at *36-37 ("Here, nothing— and certainly no actions of the Board—precluded Opportunities from complying with the Bylaws' requirements."); *Rosenbaum*, at *48 ("Even though the Board delayed in responding to the Nomination Notice, given the nature of the omissions, they rejected it on reasonable grounds. There was no manipulation; there was no inequitable conduct."). Ameriserv was justified in rejecting the Nomination Notice for its failure to comply with the validly enacted Advance Notice Bylaw.

Moreover, there is no dispute that Ameriserv's bylaws do not provide for an opportunity to cure any defects in the Nomination Notice or any obligation on the part of Ameriserv to timely notify of deficiencies, let alone a duty to receive or credit supplemental disclosures received after the nomination notice window closes. "If the bylaw is unambiguous in its language, [the court] does not proceed to interpret it or to search for the parties' intent behind the bylaw." *Pearson v. Exide Corp.*, 157 F. Supp. 2d 429, 436 (E.D. Pa. 2001) (citing *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 343 (Del. 1983)). The court should only interpret "the bylaw as it is written, and…give language which is clear, simple, and unambiguous the force and effect required." *Id*. To grant the relief Driver seeks, the Court would impose on Ameriserv a duty to allow for a cure period and/or supplemental disclosures past the close of the nomination window when its bylaws unambiguously do not provide for such remedies.

### c. Ameriserv's Rejection of the Entire Nomination Notice was Justified.

Driver contends that the Board unfairly applied the Advance Notice Bylaw by rejecting the Nomination Notice as to Cooper and Simmons when the disclosure deficiencies related only to

Rudolph.  In the case *Rosenbaum v. CytoDyn Inc.*, No. 2021-0728-JRS, 2021 Del. Ch. LEXIS 241 (Ch. Oct. 13, 2021), which both parties cite to, the Delaware Chancery Court addressed this issue. In that case, the nomination notice was deficient in two key respects, one of which being that it failed to disclose who was supporting plaintiffs' proxy contest, which the plaintiffs were required to disclose under defendant's advance notice bylaws.  *Id.* at \*40.  The court noted plaintiffs did not make any statement as to supporters, "preferring instead to withhold the information based on an unreasonable interpretation of their disclosure obligations under the Advance Notice Bylaw." *Id.* at \*43.  Some of the nominees were being supported by individuals/entities that they did not disclose, but some did not have any supporters.  The court noted that plaintiffs thus urged the court to "undertake a nominee-by-nominee analysis when assessing the sufficiency of the Nomination Notice."  *Id.* at \*43 n.188.

In examining this argument, the *Rosenbaum* court found that while "[p]laintiffs cite no authority for the proposition that a Board must dissect a facially deficient nomination notice to ascertain whether parts of it, with respect to individual nominees, might pass muster," the defendants similarly cited "no authority for the counter-proposition—that the Board can justify rejecting a notice of one nomination based on deficiencies in the notice with respect to another nomination (in this case, deficient disclosures regarding one nominee that do not apply to other nominees)."  *Id.*  The court concluded the plaintiffs had the "better of the argument," stating that "the Board is obliged to review a nomination notice carefully and with an open mind" and that "[j]ust because it finds disclosures inadequate with respect to one nominee, that does not mean, or justify a finding, that the entire notice is deficient."  Ultimately though, the *Rosenbaum* court found that the "failures with respect to disclosing support for the nominations cut across the entire Nomination Notice and justified the Board's rejection of the notice in its entirety" as "the

Nomination Notice failed to provide information regarding supporters for *any* of the Plaintiffs' Nominees." *Id.* at *48 (emphasis in original).

Here, as to all three nominees, the Nomination Notice failed to make any disclosures as to the nominees' related party transactions. The Nomination Notice chose to disclose only that there were no transactions for each of its nominees' "associates". There was no explanation in the record as to why Driver chose to prepare its Nomination Notice to refer to "associates" rather than disclose related party transactions. Rather than make the appropriate related party disclosures, even in a general way, Driver chose to substitute the word "associates" and not address the related party disclosures in any way. While it appears that only Rudolph had related party transactions that should have been disclosed, the failure to provide either affirmative or negative information as to the related party transactions of any of the nominees cuts across the Nomination Notice. *See Rosenbaum,* at *48 ("[t]his fundamental failure affects the viability of each of their candidacies and justified the Board's rejection of the entire Nomination Notice.")

Moreover, regarding Cooper, Ameriserv determined he was ineligible to be a Board member under its Interlocks Bylaw. The Interlocks Bylaw, like the Advance Notice Bylaw, was passed on a "clear day" in 2003 by the Board. There is no dispute that, on April 18, 2023, Cooper was elected to the board of directors of The First of Long Island Corporation, which is a depository institution. Cooper has not sought nor obtained Board approval under the Interlocks Bylaw to serve as a director.

Driver argues that the Interlocks Bylaw restrictions constitute "qualifications" for Directors, which can only be set through a shareholder vote. However, Ameriserv's Bylaws do not require a shareholder vote to establish director eligibility. As summarized by Ameriserv, the Interlocks Bylaw establishes a status-based eligibility requirement that prohibits individuals who

have served on the board of directors of another depository institution within five years from serving on Ameriserv's Board (ECF No. 22 at p. 51). Ameriserv contends the Interlocks Bylaw was validly passed as it has nothing to do with a prospective director's qualifications to serve, rather it speaks to a prospective director's eligibility. The Court agrees that the Interlocks Bylaw speaks to the eligibility of a prospective director and that Ameriserv reasonably determined Cooper was ineligible from serving as a director, absent approval from the Board which he did not seek.

As stated by the Court in *Rosenbaum*, "[w]here Plaintiffs ultimately went wrong here is by playing fast and loose in their responses to key inquiries embedded in the advance notice bylaw." *Id.* at *4. Driver's alleged harm caused by the rejection of its Nomination Notice is a direct result of its failure to comply with Ameriserv's valid nomination process. The record shows Driver failed to meet the requirements of the Advance Notice Bylaw, and Ameriserv appropriately rejected Driver's Nomination Notice for failing to comply with its Advance Notice Bylaw. Accordingly, the Court finds Driver is not likely to succeed on its claims at Count II.

### 2.  Driver is not likely to succeed on its Section 14(a) claim.

At Count I, Driver alleges that Ameriserv disseminated intentionally false and misleading statements in its March 15, 2023 DEFA 14A proxy soliciting material (ECF No. 1 at ¶89). Specifically, Driver alleges that Ameriserv's March 15, 2023 Letter and Press Release contained materially false or misleading information by stating that Driver's Nomination Notice "does not constitute valid notice of nominations for the Annual Meeting" and "Driver does not have the right to nominate any candidates for election as directors at the Annual Meeting." *Id.* at ¶90. Driver also contends AmeriServ's public representations regarding Driver's nomination of Cooper as being noncompliant with AmeriServ's Interlocks Bylaw and Cooper being ineligible to serve as a director of AmeriServ also were intentionally false and misleading statements. *Id.* Driver

contends these statements were made for the purpose of deceiving shareholders into believing that they should not or could not vote for Cooper or the other Driver nominees and/or that Driver's nominees for election to the Board were improper. *Id.*

Ameriserv correctly states that "it is only possible for these statements to be false if Driver is correct that the Company's Advance Notice Bylaw is unfair and unreasonable, that the Company applied its Advance Notice Bylaw unfairly and unreasonably, and that the Interlocks Bylaw is invalid" (ECF No. 22 at p. 27). Based on the Court finding that Driver is not likely to succeed on its claims as to Count II, the Court likewise finds that Driver is not likely to prevail on its claim at Count I because it is not likely that Driver will be able to show that Ameriserv's proxy filings contain materially false statements.

In its Post-Hearing Brief (ECF No. 53), Driver shifts its Section 14a argument to assert Defendants' alleged "false" and "misleading" description of the pending litigation is not detailed enough. Specifically, Driver complains that the statement fails to advise shareholders of all the risks that might occur if the Court denies Driver's request for a preliminary injunction and permits the 2023 Annual Meeting to go forward, but later holds Driver's Nomination Notice was valid and the election results are invalidated. Ameriserv advised its shareholders in its definitive proxy statement as follows:

> "[w]hile it is not free from doubt, we believe that a ruling rejecting the request to delay the Annual Meeting but deferring final decision on the validity of the Purported Nomination Notice until after the Annual Meeting will have no effect on the outcome of the meeting. We cannot make any assurances, however, that a court would not invalidate the results of the Annual Meeting and require us to conduct a new meeting in which we include the Driver Group's candidates as director nominees."

(ECF No. 56-3 at pp. 207-208).

In its own proxy statement, Driver informed the shareholders as follows:

"The Company has unfortunately taken, what we believe to be, a baseless and unfounded position that our nomination of director candidates for election to the Board is invalid in an apparent effort to further entrench themselves in the face of the shareholder franchise. As stated above, we have filed a complaint to litigate this matter in an expedited fashion to determine if our director nominees are eligible to stand for election at the Annual Meeting, and we intend to prosecute this litigation vigorously. The outcome of this litigation may affect our ability to properly deliver proxies submitted to us on the enclosed WHITE universal proxy card…

\*\*\*

Shareholders should understand, however, that all shares of ASRV Common Stock represented by the enclosed proxy card will be voted at the Annual Meeting as marked by the shareholder, pending the results of the Pennsylvania litigation with respect to the validity of our director nominations. We believe that a court ruling on whether to delay the Annual Meeting prior to a final decision on the validity of our director nominations will occur before the Annual Meeting, so we believe that shareholders will have sufficient time to submit a new proxy card should our nominations be deemed invalid for any reason. In the event that the Court issues a ruling rejecting the request to delay the Annual Meeting but deferring final decision on the validity of our director nominations until after the Annual Meeting, the Company has disclosed that no proxies voted in favor of the Driver Nominees will be recognized or tabulated at the Annual Meeting. However, depending upon the outcome of the litigation, the results of the Annual Meeting may be invalidated and the Company may be required to conduct a new meeting in which it includes our Driver Nominees as director candidates. If the Court finds our nominations to be invalid for any reason, we intend to supplement or update these proxy materials to inform shareholders."

(ECF No. 56-3 at pp. 299, 304).

At this stage, the Court finds Ameriserv's proxy statement sufficiently describes the pending litigation and the possible outcomes of this litigation, and further, the statement is consistent with Driver's own description in its proxy statement of the pending litigation and possible outcomes. Accordingly, the Court finds Driver is not likely to succeed on its Section 14(a) claim.

### 3. Driver is Not Likely to Succeed on its Breach of Fiduciary Duty Claim Against the Director Defendants at Count III.

Driver argues it is likely to succeed on its breach of fiduciary duty claim at Count III because the Director Defendants' duties "require them to refrain from taking steps to improperly

interfere with the stockholder franchise for the purpose of entrenchment, including the right to nominate directors for election," and the Director Defendants "rejected Driver's Nomination Notice in bad faith and in breach of the Board's fiduciary duty of loyalty" (ECF No. 4 at pp. 47-48). However, under the BCL, a corporation's "board of directors…and individual directors" owe fiduciary duties "solely to the business corporation and not to any shareholder…" 15 Pa. C.S. § 1717. Fiduciary duties "may be enforced directly by the corporation or may be enforced by an action in the right of the corporation [(derivatively)]," but they "may not be enforced directly by a shareholder." *Id.*; *see also Malmros v. Jones*, No. CIV.A. 03-3489, 2004 WL 632726, at *1 (E.D. Pa. Feb. 27, 2004) ("Under 15 Pa. C.S.A. Section 1717, enacted when the Pennsylvania legislature amended the BCL in 1990, a member of a corporate board of directors has a fiduciary duty only to the corporation and not to individuals."); *Stilwell Value Partners I, L.P. v. Prudential Mut. Holding Co.*, No. 06-4432, 2007 U.S. Dist. LEXIS 59653, at *28 (E.D. Pa. Aug. 15, 2007) ("The intent of the statute [Section 1717 of the BCL] was to supplement the corporate constituency provisions and clarify that lawsuits predicated on an independent fiduciary duty to shareholders may not be brought."); *Minielly v. Acme Cryogenics, Inc.*, No. 15-6164, 2016 U.S. Dist. LEXIS 40905, at *23 (E.D. Pa. Mar. 28, 2016)("[s]hareholders lack standing to sue the board of directors on their own behalf.").

The district court in *High River Ltd. P'ship v. Mylan Labs., Inc.*, 383 F. Supp. 2d 660 (M.D. Pa. 2005) addressed claims similar to those in this case, including a breach of fiduciary duty claim against individual directors. In that case, the district court held that plaintiff, a major shareholder, had no right to maintain its claim that a corporation's advance notice bylaw amendments were not fair and reasonable against individual corporate directors and board members. The district court found that the amended advance notice bylaws represented an action of the corporation, not the

directors, under the BCL.  The duty imposed on directors to act in good faith ran solely to the corporation and could not be enforced directly by the shareholder pursuant to Section 1717.

Here, Ameriserv argues that Driver is not likely to succeed on its breach of fiduciary duty claim because Section 1717 of the BCL expressly precludes such a claim.  In reply, Driver contends that its fiduciary duty claim seeks to remedy the harm that the Director Defendants' alleged improper and inequitable conduct caused to Driver, describing this as "harm which is independent of any harm those actions caused the Corporation" (ECF No. 31 at p. 13).

A shareholder may bring an individual action "[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly." *Stillwell* at *28, quoting *In re Penn Cent. Sec. Litig.*, 347 F. Supp. 1324, 1326 (E.D. Pa. 1972).  Driver asserts the harms it alleges in Count III stem from the acts of the individual Director Defendants to reject the Nomination Notice in bad faith and entrench themselves in office. Driver relies on the case *Jewelcor Mgmt., Inc. v. Thistle Grp. Holdings, Co.*, 60 Pa. D. & C.4th 391 (Com. Pl. 2002) to argue that Pennsylvania permits individual shareholders to maintain a breach of fiduciary duty claim against directors based on alleged interference with shareholder's electoral rights.

The district court in *Stilwell Value Partners I, L.P. v. Prudential Mut. Holding Co.*, No. 06-4432, 2007 U.S. Dist. LEXIS 59653 (E.D. Pa. Aug. 15, 2007) thoroughly examined the statutory history of this section of the BCL, including the Draftmen's Comment to Section 1717, which states as follows:

> "This section reaffirms the statutory concept (*see e.g.,* 15 Pa.C.S. §§ 1712, 1715 and 1716) that the directors' duty is owed solely to the corporation. It therefore limits standing with respect to an asserted breach of duty by directors to the corporation itself or to shareholders suing as such in a secondary or derivative action . . ."

*Id.* at *27-28.

Here, as in *Stillwell*, the Director Defendants do not stand in a fiduciary relationship to Driver, and therefore, Driver lacks standing to bring a breach of fiduciary duty claim against the Director Defendants. *See Stillwell* at *24 ("Defendants contend that [the breach of fiduciary duty claim] asserted against the director defendants must be dismissed because the director defendants do not stand in a fiduciary relationship to plaintiff and, pursuant to section 1717 of the Pennsylvania Business Corporation Law ("BCL"), plaintiff lacks standing to bring a direct claim for breach of fiduciary duty against the corporation's directors. I agree."). Further, the *Stillwell* court specifically found that the *Jewelcor* case "is of limited persuasiveness because it is a case from the Pennsylvania Court of Common Pleas, does not discuss the language of the BCL, and relies principally on a case from Delaware." *Id.* at *32.

The basis for Driver's claim at Count III against the Director Defendants appears to be their status as shareholders of Ameriserv, and Count III is entitled "Breach of Fiduciary Duties- Rejection of Nomination Notice." Despite its characterization to the contrary, the sole basis for Driver's claims against the Director Defendants is their alleged fiduciary duty to Driver as a shareholder and "there simply is no duty running from the directors to the shareholders" under these circumstances. *Id.* at *33 ("… the language of the BCL…explicitly precludes an action by a shareholder for breach of fiduciary duty by a corporation's directors.").[5] Accordingly, the Court finds Driver is not likely to succeed on its breach of fiduciary duty claim at Count III.

---

[5] *Compare with Copland v. Fischer & Porter Co.*, 32 Pa.D.&C. 4th 57, 62-63 (C.P. Bucks 1996) (finding plaintiffs stated a claim against individual defendant shareholders by alleging that defendants improperly used their controlling vote to take actions that ultimately diluted the profits that should have been received by all the shareholders, as "any losses suffered by the plaintiffs as set forth in their complaint, were exclusively at the hands of the individual defendants, and any recovery thereof, if warranted, should similarly come exclusively from the individual

**B. Driver has failed to show it will suffer immediate and irreparable harm if an injunction does not issue.**

Irreparable harm is harm that "cannot be redressed by a legal or an equitable remedy following a trial." *Instant Airfreight Co. v. C.F. Airfreight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction. *Id.* (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)). The Court finds Driver has failed to demonstrate it will suffer irreparable harm if an injunction does not issue.

In the event Driver were to succeed on its claims, it is well within this Court's equitable powers to order that new corporate elections take place with the inclusion of its slate of nominees. *See Goldstein v. Lincoln Nat'l Convertible Secs. Fund, Inc.*, 140 F. Supp. 2d 424, 437-41, 447 (E.D. Pa. 2001) (directing that new corporate elections take place after finding that the board of directors unlawfully applied an advance notice provision to preclude plaintiff's nominees), vacated in part on other grounds, 140 F. Supp. 2d 424, No. 01-2259, 2003 WL 1846095 (3d Cir. Apr. 2, 2003)). To that end, Ameriserv's proxy statement advised shareholders that "[w]hile it is not free from doubt, we believe that a ruling rejecting the request to delay the Annual Meeting but deferring final decision on the validity of the Purported Nomination Notice until after the Annual Meeting will have no effect on the outcome of the meeting. We cannot make any

---

defendants"). Here, the rejection of the Nomination Notice pursuant to the Advance Notice Bylaws was done by Ameriserv. *See also, High River*, 383 F. Supp. 2d at 665 (M.D. Pa. 2005) ("[n]otwithstanding the motivations of the individual board members, the advance notice bylaws represent an action of the *corporation*, not the directors. *See id.* §§ 1502, 1721.") (emphasis in original). Further, the relief Driver seeks is against Ameriserv, not the Director Defendants. *See, id.* ("[n]or may High River maintain its claims against the individual members of the Mylan Board for breach of fiduciary duty, malfeasance, and misfeasance. Relief from enforcement of the bylaws, if available, must be sought from the corporation itself.") (internal citations omitted).

assurances, however, that a court would not invalidate the results of the Annual Meeting and require us to conduct a new meeting in which we include the Driver Group's candidates as director nominees" (ECF No. 56-3 at pp. 207-208).  Ameriserv's CEO Stopko also testified that "if we had to re-hold an annual meeting, we would refile proxies, refile proxy cards, get a new record date and…I think the phrase is a do-over" (ECF No. 52, p. 67:13-16).

Driver contends that if the Court later orders a new election with AmeriServ's proxy statements amended to list Driver's nominees, in the next proxy fight, Ameriserv will argue that shareholders should vote for the incumbent Board's candidates because they already voted for them in the previous election.  Driver also argues the Court would likely be called upon to address a quagmire of issues, such as the validity of any acts of the Board that included the invalidly elected directors.

At this time, the Court agrees with Ameriserv's position that such issues are speculative and do not justify issuance of a preliminary injunction.  *See Capobianco v. First Nat'l Bank*, 372 F. Supp. 416 (M.D. Pa. 1974) (in evaluating a motion for preliminary injunction following the rejection of a nomination notice and proposed slate of directors pursuant to an advance notice bylaw, the concern that the defendant would make business decisions harmful to the plaintiff if the meeting to elect directors was not enjoined was speculative and did not constitute irreparable harm);[6] *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) ("Establishing a risk

---

[6] Driver raises the upcoming vote on cumulative voting in support of its claim of irreparable harm. However, cumulative voting will be subject to a referendum <u>shareholder</u> vote at the annual meeting, therefore, whether Driver's nominees are considered has no bearing on any <u>shareholder</u> vote regarding cumulative voting. Further, whether Driver's nominees are considered will not affect the procedure or right of any shareholder to vote, including Driver, on whether to retain cumulative voting. Driver has already been able to communicate with Ameriserv's shareholders regarding its views on this issue in advance of the 2023 Annual Meeting, and its proxy statement expressly urges shareholders to vote against amending the articles to eliminate the ability to exercise cumulative voting. The Court agrees with Ameriserv's position that it is speculative to

of irreparable harm is not enough."). Further, though Driver specifically identified that there is a monetary cost associated with nominating a competing slate of directors, such a harm precludes its claim for injunctive relief. *See Instant Air Freight Co.*, 882 F.2d at 801 ("If a harm is compensable with money damages, it is not irreparable harm.").

Driver relies on a number of cases to contend that denying shareholders the right to vote their shares or frustrating shareholders attempts to obtain representation on the board of directors constitutes irreparable harm. *See AHI Metnall, L.P. by Ahi Kan., Inc. v. J.C. Nichols Co.*, 891 F. Supp. 1352, 1359 (W.D. Mo. 1995); *Danaher Corp. v. Chi. Pneumatic Tool Co.*, 1986 U.S. Dist. LEXIS 24022, at *1 (S.D.N.Y. June 18, 1986); *Treco, Inc. v. Land of Lincoln Sav. & Loan*, 572 F. Supp. 1447, 1448 (N.D. Ill. 1983); *Int'l Banknote Co. v. Muller*, 713 F. Supp. 612, 627 (S.D.N.Y. 1989).

The Court generally agrees with this basic corporate principle. However, the cases relied on by Driver are readily distinguishable as they do not involve challenges to advance notice bylaws, or involve invalid, after the fact advance notice bylaws. For example, in *Metnall*, the court granted a preliminary injunction to invalidate a requirement that only shareholders possessing 20% or more of the shares could nominate director candidates. *Id.* at 1356-58. In *Danaher*, the court granted a preliminary injunction to prevent the company's management from postponing or cancelling the annual meeting of shareholders in an effort to prevent a controlling shareholder from voting. In *Treco*, the court granted the motion for preliminary injunction when shareholders delivered a written demand to call a special meeting to consider and vote on a proposal to amend the company's bylaws to require cumulative voting in the election of the company's directors, but

_____

even assume cumulative voting will be eliminated by a shareholder vote at the 2023 Annual Meeting.

defendants refused to convene a special meeting. While *Int'l Banknote* does relate to an advance notice bylaw, the court granted a preliminary injunction in that case after finding the company only adopted its 45-day advance notice bylaw less than 24 hours after receiving a Schedule 13D filed on behalf of shareholders seeking to change the corporate management.

Driver's recitation of cases involving a shareholder's right to vote for certain candidates or obtain board representation entirely ignores that Driver's own actions have prevented it from engaging in a contested proxy election in this case. The BCL expressly allows a board to enact an advance notice bylaw, and the disclosures required by Ameriserv's Advance Notice Bylaw are "customary". The evidence shows Driver chose not to make the disclosures required by the Advance Notice Bylaw by the close of the nomination window. Ameriserv's rejection of the Nomination Notice was fairly based on Driver's clear failure to comply with the validly enacted Advance Notice Bylaw. Injunctive relief is not warranted as the circumstances in this case fail to trigger the need for the Court to protect the shareholder's voting rights. Driver's inability to have its director nominees considered for election at the 2023 Annual Meeting is entirely a result of its own failures, not as a result of Ameriserv's conduct.

Driver also complains it will suffer ongoing irreparable harm because Ameriserv has deprived it of the right to communicate with their fellow shareholders. At the preliminary injunction hearing, Driver indicated it would be providing shareholders with its proxy statement which describes its position in this litigation within the week of May 11, 2023 (ECF No. 51, p. 24: 21). It is not clear what other communications Driver intended to make to shareholders regarding the 2023 Annual Meeting. Further, as previously stated, there does not appear to be a risk that the shareholders will be uninformed as to the issues in this litigation as both parties have presented shareholders with proxy statements explaining their positions.

The circumstances in this case also do not present a situation where the harm is irreparable because it would be difficult to "unscramble the eggs" after the 2023 Annual Meeting takes place. *See Ronson Corp. v. Liquifin Aktiengesellschaft*, 483 F. 2d 846, 851 (3d Cir. 1973) (finding harm to be irreparable after tender offer was consummated); *Wurtzel v. Park Towne Place Apartments Ltd. P'ship*, 62 Pa. D. & C.4th 330 (Com. Pl. 2001) (enjoining limited partnership from merging with an entity affiliated with the general partner when a supermajority of the limited partners did not approve the merger as required by the limited partnership agreement). Here, if Driver were to succeed on its claims, the Court would order new corporate elections take place with the inclusion of its slate of nominees. Both the parties have provided shareholders with proxy statements advising of this possibility. As Driver has failed to show it will face immediate, irreparable harm without the issuance of an injunction, the Court will deny its request for such extraordinary relief.

**VI. Conclusion**

A party seeking a preliminary injunction "must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly*, 858 F.3d at 179 (3d Cir. 2017). The Court finds Driver has failed to satisfy its burden as to these first two factors, and accordingly, Driver's Motion for Preliminary Injunction (ECF No. 4) is hereby DENIED. An appropriate order will follow.

Date:

Stephanie L. Haines
United States District Judge

29