IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DRIVER OPPORTUNITY PARTNERS I, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 3:23-56 |
| | ) | Judge Stephanie L. Haines |
| J. MICHAEL ADAMS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

This civil action is a dispute between Plaintiff Driver Opportunity Partners I, LP ("Driver"), a shareholder of Ameriserv Financial, Inc. ("Ameriserv"), and Ameriserv and its Board of Directors (collectively, "Defendants"). Driver tried to nominate three candidates to the Board of Directors of Ameriserv and Defendants rejected Driver's Nomination Notice for failure to comply with the advance notice provisions of Ameriserv's Amended and Restated Bylaws. Driver filed an Amended Complaint (ECF No. 61) seeking declaratory and injunctive relief claiming that the rejection of the shareholder's notice of nomination was an attempt to utilize corporate machinery for the purpose of perpetuating its own agenda, usurping the rights of the shareholders. On June 14, 2023, Defendants filed a Motion to Dismiss (ECF No. 64) and a Brief in Support (ECF No. 65). Driver filed a Response in Opposition to the Motion to Dismiss (ECF No. 68) and Defendants filed a Reply (ECF No. 69). The Motion is ripe for disposition.

On March 30, 2023, Driver sought a Preliminary Injunction (ECF No. 4) to enjoin Ameriserv from holding its 2023 Annual Meeting until after the merits of the case were decided. The Court conducted a preliminary injunction hearing on May 9 and 10, 2023 (ECF Nos. 51, 52). The Parties filed post-hearing briefs (ECF Nos. 54, 55), and the Court issued its Opinion on May

22, 2023 (ECF No. 59).  The Court considered the arguments for and against injunction, and ultimately determined that Driver was, in fact, deficient in its Nomination Notice, and that Ameriserv had followed its bylaws in rejecting the nomination notice.  Ameriserv held its annual meeting on May 26, 2023, and Driver's nominees were not offered as potential candidates for the Ameriserv Board of Directors.  The issues and arguments presented to the Court for the preliminary injunction were similar, if not identical, to the issues that the Court now considers in this Motion to Dismiss the Amended Verified Complaint for Declaratory, Injunctive, and other Relief.  For the same reasons the Court denied preliminary injunction, and for the reasons below, the Motion to Dismiss will be granted.

## I.  Factual Background[1]

As stated above, the Court has conducted a careful and thorough review and published a detailed opinion on the issue of preliminary injunction.  It will dispense with a full recitation of the facts and will provide only the facts most relevant to the motion at hand.  Still, the facts are repetitive of the Court's preliminary injunction opinion.

### A.  Ameriserv's Bylaws

Ameriserv's Advance Notice Bylaw is found at Section 1.3 of its bylaws, and it sets forth the notice requirements that Ameriserv requires of all candidates for its board of directors nominated by a shareholder.  To nominate a director candidate, the nominating shareholder must provide "timely written notice" to the Non-Executive Chairperson of the Company Board in accordance with the requirements in Section 1.3(b) of the Advance Notice Bylaw (ECF No. 22-3

---

[1] Unless otherwise noted, the facts included in this section are taken from the Joint Stipulation (ECF No. 34) that the parties filed before the preliminary injunction hearing.

at pp. 9-10). The Advance Notice Bylaw identifies nine categories of information that any shareholder seeking to nominate a director candidate must provide as to each candidate, including:

> such other information regarding each nominee proposed by the Nominating Shareholder as would have been required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission had the nominee been nominated, or intended to be nominated, by the Board of Directors.

*Id.* at Article 1, § 1.3(b)(vii) (hereafter, "proxy information").

To be timely, "in the case of an annual meeting that is called for a date that is within 30 days before or after the anniversary date of the immediately preceding annual meeting of shareholders," the written notice must be provided "not less than 90 days nor more than 120 days prior to such anniversary date[.]" *Id.* In 2022, Ameriserv held its annual shareholder meeting on April 26, 2022 (ECF No. 22 at p. 5). Accordingly, the nomination window within which shareholders were required to submit nomination notices in accordance with the Advance Notice Bylaw ran from December 27, 2022, to January 26, 2023. *Id.* Under the Advanced Notice Bylaw, if the annual meeting is not held within 30 days of the anniversary of the prior year's meeting, then the shareholder nomination period resets (ECF No. 22-3 at pp. 9-10, § 1.3(a)). The Advance Notice Bylaw was adopted in its current form in 2013 (ECF No. 34 at ¶ 72).

Also of relevance to this matter, Ameriserv's bylaws contain what the parties refer to as an "Interlocks Bylaw" at Section 2.14. *Id.* ¶ 73. The Interlocks Bylaw provides that: "[n]o person shall be eligible for election, re-election, appointment or re-appointment to the Board … if such person is or within the preceding five years has been a director of any other depository institution unless such person is approved by a majority of the Board…" (ECF No. 22-3 at pp. 9-10, Article 2, § 2.14). There is no dispute that the Interlocks Bylaw was adopted in 2003 by a vote of Ameriserv's Board and not by a vote of shareholders (ECF No. 34 at ¶ 73).

**B. Driver's Nomination Notice and Ameriserv's Deficiency Letter**

In December 2022, Driver informed Ameriserv that it wished to nominate three individuals as director candidates for Ameriserv's Board of Directors at the upcoming 2023 Annual Meeting. On January 9, 2023, Ameriserv asked Driver to have its proposed nominees complete a nominee questionnaire and make themselves available for an interview (ECF No. 22-3 at p. 4). However, Driver declined to participate in this voluntary process.

Instead, on January 17, 2023, Driver delivered its Nomination Notice to Defendant Dennison, the Chair of the Board of Ameriserv (ECF No. 34 at ¶¶ 6, 26). In the Nomination Notice (ECF No. 22-3 at pp. 25-40), Driver stated it intended to nominate J. Abbott R. Cooper, Julius D. Rudolph, and Brandon L. Simmons as nominees to be elected to the Board as directors at the 2023 Annual Meeting (ECF No. 34 at ¶ 26). Cooper testified that Driver hired outside counsel to collect the information Driver needed to provide in its Nomination Notice (ECF No. 51 at pp. 15:11-16:13, 103:5-8, 103:17-104:1). Driver submitted the Nomination Notice on January 17, 2023, and the parties do not dispute January 26, 2023, was the applicable deadline.

On January 31, 2023, Ameriserv responded to Driver's Nomination Notice ("Deficiency Letter") (ECF No. 22-3 at pp. 42-44). In the Deficiency Letter, Ameriserv identified four deficiencies with the Nomination Notice related to the proxy information required under Schedule 14a. *See* 17 C.F.R. § 240.14a-101. Ameriserv first identified that Item 5(b)(1)(ii) of Schedule 14A requires the disclosure of each nominee's "present principal occupation or employment and the name, principal business and address of any corporation or other organization in which such employment is carried on…". *Id.* § 240.14a-101. As to Rudolph, the Nomination Notice failed to confirm that Rudolph's listed address was his principal place of business, and as to Simmons, the

4

Nomination Notice failed to provide addresses for his listed employment or confirm whether those addresses were the same as the address provided on the notice for Simmons.

As the second deficiency, Ameriserv stated that Item 5(b)(1)(vi) of Schedule 14A requires the Nomination Notice to "[s]tate with respect to all securities of the registrant purchased or sold within the past two years, the dates on which they were purchased or sold, and the amount purchased or sold on each such date." *Id.* § 240.14a-101, Item 5(b)(1)(vi).  Driver's Nomination Notice states that "none of the Nominees have entered into any transactions in the securities of the Company during the past two years" (ECF No. 22-3 at p. 31).  However, Exhibit A of the Nomination Notice disclosed numerous transactions by Rudolph, but the Nomination Notice did not address this inconsistency.  The Nomination Notice also failed to state whether McKnight Realty Partners, of which Rudolph currently serves as CEO, or any of its principals or affiliates has purchased or sold any securities of Ameriserv during the past two years.

As to the third deficiency, Ameriserv stated that Item 7(b) of Schedule 14A requires the disclosure of the information required by Item 404(a) of the U.S. Securities and Exchange Commission ("SEC") Regulation S-K.  *Id.* § 240.14a-101, Item 7(b).  Item 404(a) requires the disclosure of "any transaction, since the beginning of the registrant's last fiscal year, or any currently proposed transaction, in which the registrant was or is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest."  17 C.F.R. § 229.404.  The applicable definition of "related persons" includes "any immediate family member...of any nominee for director..." *Id.*, Instructions 1(a)(iii). Ameriserv identified in its Deficiency Letter that the Nomination Notice completely ignored the requirement to disclose related party transactions ("related party transactions") as to all nominees, noting the Nomination Notice stated only that "no Participant or any of his, her or its 'associates'

5

was a party to any transaction, or series of similar transaction…to which the Company or any of its subsidiaries was or is to be a party…[exceeding] $120,000" (ECF No. 22-3 at p. 43). The term "associates" is a defined term that includes only "any relative of such spouse who has the same home as such person." 17 C.F.R. § 240.14c-1(a)(3).

Lastly, as to the fourth deficiency, Ameriserv stated that "Item 8 of Schedule 14A requires with respect to the Nominees and their associates, the disclosure of the information required by Item 402 of Regulation S-K (Executive Compensation)." Driver's Nomination Notice failed to provide this required disclosure. 17 C.F.R. § 240.14a-101, Item 8.

As to the deficiencies in the Nomination Notice, Ameriserv stated it would "appreciate [Driver's] prompt attention to [those] issues" (ECF No. 22-3 at p. 44). The Deficiency Letter cautioned however that the letter should not be interpreted to be confirmation or validation of the sufficiency, timeliness or adequacy of the Nomination Notice in any respect (ECF No. 22-3 at p. 44) (*see also* ECF No. 51 at p. 127:7-22). There is no dispute that Ameriserv's bylaws do not require it to inform Driver of any deficiencies in its Nomination Notice and do not provide a "cure" period or process to correct any deficiencies after the expiration of the nomination window deadline (ECF No. 51 at pp. 129:11-16; 97:25-98:1-4).

### C. Related Party Transaction Disclosures and Ameriserv's Rejection of Driver's Nomination Notice

On February 10, 2023, Driver responded to Ameriserv's January 31, 2023, letter regarding the Nomination Notice (ECF No. 22-3 at pp. 46-49). In that letter, Driver disclosed that Rudolph's father had a $4 million line of credit with Ameriserv and his brother-in-law, identified incorrectly as "Benyamin Dere," had "several commercial mortgage loans from the Company in connection with the purchase of rental units, which total, in the aggregate, approximately $8 million." *Id.* at p. 48. At the preliminary injunction hearing, Rudolph testified he provided the related party

transaction information to Driver's attorneys during the preparation of the Nomination Notice (ECF No. 52, at pp. 33-34). In addition to providing this disclosure to Ameriserv, Driver also provided Rudolph's related party transaction information to the SEC as part of its preliminary proxy statement on February 8, 2023 (ECF No. 34 at ¶ 39).

On March 7, 2023, Ameriserv wrote to Driver to inform it of its intent to nominate Richard W. Bloomingdale, David J. Hickton, and Daniel A. Onorato for election to the Company's Board at the 2023 Annual Meeting. *Id.* ¶ 43. On March 15, 2023, Ameriserv wrote to Driver to reject its Nomination Notice ("Rejection") (ECF No. 34 at ¶ 44, ECF No. 22-3 at pp. 51-61, JX-24). Ameriserv stated it rejected the Nomination Notice because it failed to satisfy the requirements of the Advance Notice Bylaw and that Driver's failure to timely comply with the Advance Notice Bylaw prevented Driver from seeking to elect its proposed nominees to the Board at the 2023 Annual Meeting. The Rejection also stated that Ameriserv looked into Rudolph's related party transaction disclosure and determined that the information Driver provided on February 10, 2023, was inaccurate in terms of (1) the number of lines of credit at issue, (2) the amount of the loans at issue, and (3) the first and last names of Rudolph's brother-in-law (ECF No. 52 at p. 52:1-20). Ameriserv's Rejection also explained Cooper would be ineligible to join the Board under the Interlocks Bylaw because Cooper was set to be elected as a director to the board of the First of Long Island Corporation, a depository institution, on April 18, 2023. AmeriServ also then publicly filed its proxy soliciting material with the SEC (ECF No. 34 at ¶ 45, JX-25).

On March 16, 2023, Driver responded to the Rejection by refusing to withdraw its nominee slate and threatening litigation against Ameriserv and its Directors if they refused to reverse the decision to reject the Nomination Notice (ECF No. 22-3 at pp. 63-65). On March 17, 2023, Ameriserv filed a Complaint for Declaratory Judgment in the Court of Common Pleas of Cambria

County, Pennsylvania against Driver, Cooper, Rudolph, and Simmons (ECF No. 34 at ¶ 48, JX-27a). On March 22, 2023, Driver provided a further disclosure in response to the Rejection and disclosed that Rudolph's father "has two personal lines of credit with the Company which total $5 million" but continued to misidentify Rudolph's brother-in-law as "Benyamin Dere" (ECF No. 22-3 at pp. 67-74).

On March 29, 2023, Driver filed this lawsuit requesting that the Court (1) declare its Nomination Notice is valid; (2) enjoin Ameriserv from rejecting Driver's Nomination Notice; (3) require Ameriserv to "correct" its public filings with the SEC; (4) enjoin Ameriserv's 2023 Annual Shareholder meeting from going forward; (5) and declare that the Director Defendants breached their fiduciary duties to Driver.

## II.  Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the Court is not opining on whether the plaintiff will likely prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-236 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss under Rule 12(b)(6), the court must generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *See In re Burlington Coat Factory Sec. Litig.*, 114

F.3d 1410, 1426 (3d Cir. 1997)).  A court may take judicial notice of documents filed in other court proceedings because they are matters of public record.  *See Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325 (D.N.J. 2013).

## III.   Discussion

Driver's Amended Complaint (1) claims Defendants violated Section 14(a) of the Securities Exchange Act of 1934; (2) claims that Director Defendants breached their fiduciary duties when they rejected Driver's Nomination Notice; and (3) seeks Declaratory and Injunctive Relief.[2]

Defendants raise three grounds upon which Driver's Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.  Defendants state that the Court has already decided the legal issues which Driver believes support its claims (ECF No. 64, p. 1).  Specifically, Defendants reference the fact that the disclosure requirements under the Advance Notice Bylaw were not followed by Driver, and that Driver's nominee J. Abbott R. Cooper sits on the board of directors of another depository institution, which makes him an ineligible candidate for Ameriserv's Board of Directors.  *Id.*  Defendants also state Driver's breach of fiduciary duty claim fails as a matter of law because directors of a corporate board only owe a fiduciary duty to the company, not the shareholders.  *Id.* at 2.  Finally, Defendants state that Driver did not satisfy the elements of a Section 14(a) claim under the Securities Exchange Act of 1934. *Id.*

---

[2] The following legal issues were raised by Driver in its Amended Complaint: (1) Were Ameriserv's bylaws fair and reasonable? (2) Did the incumbent board apply the Advance Notice Bylaw fairly? (3) Was the Interlocks Bylaw invalid and applied illegally? (4) Was there a Breach of Fiduciary Duty by Ameriserv's Board of Directors? (5) Was there a violation of the Securities Exchange Act of 1934, Section 14(a)? (6) Did the Defendants make false representations? (7) Were the proxy materials false and misleading?  In the Court's Memorandum Opinion, it determined that Defendants did not violate any laws and that Defendants instituted Ameriserv's bylaws properly. Driver was not likely to succeed on the merits of its claims and accordingly the Court denied preliminary injunction (ECF No. 59 at p. 11).

The Court agrees that the same legal issues were addressed by this Court in its preliminary injunction proceedings and rulings and the Court ruled in favor of Defendants on all claims (ECF No. 60). The Court now must decide whether its legal conclusions are sufficient for its evaluation of Defendants' Motion to Dismiss.

**A. Legal Issues.**

Driver claims that it has been deprived of its right to a reasonable opportunity to nominate the directors of a corporation in which it holds a substantial financial interest. Under the Pennsylvania Business Corporation Law there is a right of a shareholder to a reasonable opportunity to nominate the directors of a corporation in which it holds a substantial financial interest. *See High River Ltd. P'ship v. Mylan Lab'ys, Inc.*, 383 F. Supp. 2d 660, 664 (M.D. Pa. 2005). Driver claims that Defendants illegally blocked its nominees from being considered for election during the 2023 annual meeting.

Defendants state Driver did not submit the necessary information under Ameriserv's Advance Notice Bylaw for a valid nomination notice. In its Memorandum Opinion (ECF No. 59), this Court found that Driver's own failure to meet the requirements of the bylaws was cause for the rejection and not any alleged illegal motives or actions. The Court also found that there was no plausible basis to conclude that Ameriserv's Advance Notice Bylaw is unfair or unreasonable. Thus, the Court has determined the legal question pertinent to this action in favor of Defendants. The Court concluded that Driver did not demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and it did not demonstrate that it is more likely than not to suffer irreparable harm in the absence of preliminary relief (ECF No. 59 at p. 29). *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

Driver argues that the procedural posture of the Motion to Dismiss differs from the preliminary injunction. It states that now the Court's role is to assume the truth of Driver's allegations in its Amended Complaint (ECF No. 68 at p. 11). This Court disagrees. The Court must accept as true all well pled factual allegations, but it need not accept legal conclusions disguised as factual allegations. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *See McTernan v. City of York, Penn.,* 577 F.3d 521, 531 (3d Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Driver's allegations that Defendants illegally blocked it's nominations are legal conclusions, not factual assertions.

Driver also states that the Court's order and opinion were not based on substantive conclusions about Driver's ultimate success on the merits of the case after discovery (ECF No. 68 at p. 11). Defendants' respond that "[F]indings made in granting or denying preliminary injunctions can have preclusive effect if the circumstances make it likely that the findings are 'sufficiently firm' to persuade the court that there is no compelling reason for permitting them to be litigated again." *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency,* 126 F.3d 461, 474 n.11 (3d Cir. 1997); *see also Bowers v. City of Philadelphia,* No. CIV A. 06-3229, 2008 WL 5234357, at *3-4 (E.D. Pa. Dec. 12, 2008). "In determining whether the resolution was sufficiently firm, the ... court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Astrazeneca AB v. Dr. Reddy's Lab'ys, Inc.,* 209 F. Supp. 3d 744, 753 (D. Del. 2016) (quoting *In re Brown,* 951 F.2d 564, 568 (3d Cir.1991)).

As stated above, when ruling on a motion to dismiss, the court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that

form the basis of a claim.  In addition, *a court may take judicial notice of documents filed in other court proceedings* because they are matters of public record.  *See Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325 (D.N.J. 2013) (emphasis added).  In its decision, the Court considered Ameriserv's bylaws (ECF No. 61-2) and the undisputed facts that were provided in a joint stipulation by the parties (ECF No. 34).  The previous proceedings, which included a two-day long hearing and briefs, allowed the Court to fully consider the merits of the claims and it concluded that Defendants properly applied the Advance Notice Bylaw, and that Driver was not likely to win this case on the merits (ECF No. 59 at p. 29). *See, e.g., McTernan v. City of York, Penn.*, 577 F.3d 521, 531 (3d Cir. 2009) ("After holding an evidentiary hearing, the District Court held that Plaintiffs had no probability of success on the merits, ..., the District Court noted that this decision effectively resolved the issues on Defendants' motion to dismiss.")

> In *McTernan*, the Third Circuit found that both motions involved the same issue and that the evidence clearly resolved a necessary element. 577 F.3d at 531. The Court held **"plaintiffs had the full opportunity to present their arguments at the hearing on the preliminary injunction"** from which the district court found there was **"no probability of success on the merits."** *Id.*

*Astrazeneca AB,* 209 F. Supp. 3d at 753.  *Compare Revzip, LLC v. McDonnell*, No. 3:19-CV-191, 2020 WL 1929523, at *7 (W.D. Pa. Apr. 21, 2020):

> Although *McTernan* is an exception to this rule, it is inapplicable here because the *McTernan* court reached its holding based on documents appended to the complaint, rather than in reliance on the testimony adduced at a preliminary injunction hearing.  Further, in *McTernan*, the court held that there was no probability of success, unlike this Court, which held, in denying Revzip's request for a preliminary injunction, that there was no likelihood of success on the merits—not no possibility. This case, therefore, is not a "rare" *McTernan* exception, the facts the Court found after the preliminary injunction hearing are not preclusive, and the Court should only consider the facts alleged in the Amended Complaint.

> *McTernan* was such a case because the issue for the preliminary injunction was identical to the issue for the motion to dismiss, and, crucially, an issue of law rather than fact—whether the ramp was a public or nonpublic forum. *Id.* at 531. ...Further, the Third Circuit also noted that photographs of the ramp the plaintiffs had

appended to their complaint supported the conclusion that the ramp was not a public forum because they permitted the district court to more fully analyze the ramp and conclude that, as a matter of law, it was not a public forum. *Id.* Accordingly, the *McTernan* exception is particularly well suited to legal questions, rather than factual ones.

Here, however, *McTernan* is not applicable. The general rule for motions to dismiss is to consider only the well-pleaded factual allegations contained in the complaint and any documents appended or integral to it; consideration of other evidence requires this Court to convert the motion into one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Only in rare exceptions, like *McTernan*, is such a deviation permissible, and this is not such a case.

First, the issues here—whether Revzip took reasonable measures to protect its trade secrets and whether the trade secrets are readily ascertainable by proper means— are not legal, but factual. *See Bro-Tech Corp v. Thermax, Inc.*, 651 F. Supp. 2d 378, 410 (E.D. Pa. 2009). Second, and relatedly, unlike the district court in *McTernan*, the Court did not find that Revzip had no possibility[3] of success, but rather had failed to establish a likelihood of success. *Compare McTernan*, 577 F.3d at 530, *with Revzip, LLC v. McDonnell*, No. 3:19-cv-191, 2019 WL 6701835, at *5–7 (W.D. Pa. Dec. 9, 2019). This was due to a failure of the evidence Revzip presented at the preliminary injunction hearing to show trade secret status, rather than Revzip's inability to avoid a court's legal conclusion that, under the facts as alleged, there could be no trade secret. *See Gray Holdco, Inc. v. Cassady*, No. 09-cv-1519, 2010 WL 2640134, at *5 (W.D. Pa. June 30, 2010). This difference means that the Court's prior findings were not "sufficiently firm" to justify *McTernan's* application in this case. *Id.* Accordingly, as there has been no opportunity for discovery, as Rule 12(d) requires, the Court may only consider the factual allegations contained in the complaint.

*Revzip*, 2020 WL 1929523, at *8.

The Court finds this case is akin to *McTernan*. First, the issues here are legal issues, not factual issues that would need to be fleshed out in discovery. The legal questions hinge upon whether Defendants operated in accordance with legal bylaws. The parties do not dispute how the Defendants acted but rather whether the bylaws dictating Defendants' actions were legal. That determination is dependent on the operative document, Ameriserv's bylaws, that were attached to the Amended Complaint (ECF No. 61, 61-2, Appendix 33 at p. 265-284). The Court's

---

[3] The Court notes that, importantly, the wording in *McTernan* is reasonable ***probability*** of success, not possibility of success.

determination also included a review of the law under Section 14(a) of the Securities and Exchange Act of 1934, as well as fiduciary law under 15 Pa. C.S. § 1717. The Court can and did make these determinations of law after being fully and thoroughly informed of the issues by the parties during the two-day preliminary injunction hearing, and after reading post-hearing briefs from both sides. Finally, the Court found that "Driver has not shown that its chance of success is 'significantly better than negligible.'" (ECF No. 59 at p. 11). While the Court did not use the phrase "no probability of success" as the *McTernan* Court did, it twice noted that Driver's chances of success were not significantly better than negligible (ECF No. 59 at pp. 11, 29), which is supportive of the same standard.[4] Based on these facts, the Court's prior findings for preliminary injunction are "sufficiently firm" to justify their application in this Motion to Dismiss.

In addition, to the legal issues having been decided in favor of Defendants, the remedies sought in the Amended Complaint have also been determined in favor of Defendants and the relief sought is stale.

**B. Driver's Prayer for Relief.** (ECF No. 61 at pp. 61-63)

a. "Declare that Driver's Nomination Notice is valid so that shareholders may vote for Driver's candidates for election to the Board at the 2023 annual shareholder meeting." This remedy is moot. The Court determined that Defendants properly adhered to Ameriserv bylaw procedure (ECF Nos. 59, 60), the 2023 annual meeting occurred, and the Board of directors was selected.

b. "Enjoin Defendants from rejecting Driver's Nomination Notice." This remedy is moot. The Court determined that Defendants properly adhered to Ameriserv

---

[4] The Court notes that the word "likely" is also used in its Preliminary Injunction Opinion (ECF No. 59 at p. 11, headings A., and A.1.). The Court considers that term to be encompassed in its more descriptive and definitive finding of a less than negligible chance of success.

bylaw procedure (ECF Nos. 59, 60), the 2023 annual meeting occurred, and the Board of directors was selected.

c.  "Require Defendants, reasonably before holding the annual meeting, to correct their public filings with the SEC, in which Defendants falsely and misleadingly asserted that Driver's Nominees may not be candidates at the 2023 annual shareholder meeting." This remedy is moot.  The Court determined that Defendants properly adhered to Ameriserv bylaw procedure (ECF Nos. 59, 60), the 2023 annual meeting occurred, and the Board of directors was selected.

d.  "Enjoin the holding of the 2023 annual shareholder meeting, order Defendants to call it solely to immediately adjourn it until after the Court can clarify the parties' rights in this action or rescind the results of the 2023 annual shareholder meeting and order the Company to conduct a new one." This remedy is moot. The Court determined that Defendants properly adhered to Ameriserv bylaw procedure (ECF Nos. 59, 60), the 2023 annual meeting occurred, and the Board of directors was selected.

e.  "Declare that the Director Defendants breached their fiduciary duties by rejecting Driver's Nomination Notice." This remedy is moot.  The Court determined that Defendants properly adhered to Ameriserv bylaw procedure (ECF Nos. 59, 60), the 2023 annual meeting occurred, and the Board of directors was selected.

f.  "Appoint a qualified, neutral special master to act as the Chairperson in connection with the 2023 Annual Meeting." This remedy is moot. The Court determined that Defendants properly adhered to Ameriserv bylaw procedure

(ECF Nos. 59, 60), the 2023 annual meeting occurred, and the Board of directors was selected.

It is contrary to common sense and judicial economy to now consider the plausibility of the case when it has already been decided that Driver's allegations are not supported by the facts. The Court finds that Driver has failed to state a claim upon which relief can be granted.[5]

## IV.    Conclusion

For the reasons stated above, Defendants' Motion to Dismiss will be GRANTED.  The case is dismissed with prejudice.  The Clerk of the Court is to mark this case closed.

An appropriate Order will be entered.

Dated: December 20, 2023

Stephanie L. Haines
United States District Court Judge

---

[5] The Court notes that there is a parallel litigation proceeding (3:22-cv-237) where the issue is whether Defendants illegally withheld corporate documents from Driver.  Given the Court's decision after the preliminary injunction hearing that the rejection of Driver's nomination notice was due to Driver's failure to abide by the procedure laid out the bylaws, the issue of withholding corporate documents is inconsequential to the outcome.